862 P.2d 57

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Larry BROOKS, Defendant–Appellant.**

**No. 13720.**

Court of Appeals of New Mexico.

June 25, 1993.

Certiorari Granted Sept. 14, 1993.

Tom Udall, Atty. Gen. and Patricia Gandert, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender and Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

*OPINION*

ALARID, Judge.

## I. INTRODUCTION

Defendant appeals his conviction of, and sentence on, seven counts of embezzlement. He raises six issues on appeal: (1) whether the single larceny doctrine applies in this case; (2) whether the court erred when it allowed a defense witness to be cross-examined about a subsequent uncharged allegation of embezzlement; (3) whether Defendant's confessions should have been excluded; (4) whether the court erred in denying the motion for directed verdict because the State had not proved entrustment; (5) whether the court erred by denying the Defendant's jury instruction defining entrustment; and (6) whether the restitution ordered by the judge is authorized by statute. We affirm.

## II. FACTS

Defendant was the bookkeeper for RMS, a property management service. He shared an office and desk with the president of the company. His responsibilities included keeping track of receipts, checking credit, making deposits, balancing check books, and other general financial matters. In particular, it was Defendant's responsibility to make out deposit slips and reconcile the deposits with the accounts receivable ledger. Rental payments were sometimes made by cash, check, or money order. When rent was paid in cash, a receipt was given and the money was placed in an envelope, which was sealed, and stored in a desk drawer. The money was logged in on a worksheet and also in an accounts receivable book.

Sometime in August of 1989, the president of RMS discovered over $3000 missing from rental monies. He hired a private investigator to look into the matter. The private investigator began his inquiries with Defendant. Defendant was given a polygraph test and acknowledged taking the money. In addition, Defendant wrote a confession admitting that he took the money.

## III. DISCUSSION

Defendant was convicted of seven separate embezzlements (two misdemeanors and five fourth degree felonies) with regard to the taking of seven separate amounts of money from different clients of RMS. He contends here that he should have been convicted of only one third degree felony embezzlement. Defendant relies on *State v. Pedroncelli*, 100 N.M. 678, 675 P.2d 127 (1984), and *State v. Brown*, 113 N.M. 631, 830 P.2d 183 (Ct.App.), *cert. denied*, 113 N.M. 636, 830 P.2d 553 (1992), in support of his argument.

### A. Single Larceny Doctrine

As an initial matter, we note that "[e]mbezzlement is admittedly distinguishable from larceny." *Pedroncelli*, 100 N.M. at 680, 675 P.2d at 129. "Embezzlement consists of the embezzling or converting to [one's] own use of anything of value, with which [one] has been entrusted, with fraudulent intent to deprive the owner thereof." NMSA 1978, § 30–16–8 (Cum.Sup.1992). Thus, larceny involves an original wrongful taking or trespass, whereas embezzlement involves lawfully possessed property that an offender later converts to his own use. *See State v. Peke*, 70 N.M. 108, 115, 371 P.2d 226, 230, *cert. denied*, 371 U.S. 924, 83 S.Ct. 293, 9 L.Ed.2d 232 (1962); *State v. Bryant*, 99 N.M. 149, 150, 655 P.2d 161, 162 (Ct.App.1982). The differences between these crimes do not preclude reliance upon "single larceny" decisions in embezzlement cases. However, the fact finder is required in both circumstances to "evaluate the evidence to determine if one protracted intention accompanies the several takings or conversions [so] that [they] may be implicated within a single charge." *Pedroncelli*, 100 N.M. at 681, 675 P.2d at 130. In *Pedroncelli*, the New Mexico Supreme Court explained that "[t]he nature of the entrustment involved in a particular case should be considered in ascertaining the number of crimes committed and the permissible unit of prosecution employed in that case." *Id.* Thus, whether a series of successive takings from the same owner constitutes one single embezzlement or a

series of separate embezzlements depends upon the particular facts and circumstances of a given case.

■ In *Pedroncelli*, the defendant was convicted of a single count of embezzlement over $2500, a third degree felony. The defendant was the custodian of credit union funds and was also a union official. The evidence supporting the conviction was the negotiation of thirty-six checks or cash withdrawals over a six-month period. Each of the thirty-six acts involved less than $2500; however, the total of the thirty-six acts was more than $2500. The defendant was charged with one count of embezzlement over $2500, in violation of Section 30–16–8. The Supreme Court stated that "[t]he evidence adduced at Pedroncelli's trial sufficiently showed her continuing intention to violate her ongoing entrustment as an elected union official." *Pedroncelli*, 100 N.M. at 681, 675 P.2d at 130.

In the present case, although Defendant was acting in his capacity as an employee for RMS at the times the monies were taken, the nature of his entrustment as an employee is distinguishable from that of union official taking monies from union funds. Defendant's embezzlements occurred on separate dates, they occurred randomly, they involved separate clients, and separate dollar amounts. Therefore, since the prosecutor chose to charge separate embezzlements based on separate takings, it was required to present evidence to prove a separate intent for each taking. *Pedroncelli* does not mandate that a single count of embezzlement is appropriate under the given facts of this appeal, nor do we believe it stands for such proposition. Thus, we are not persuaded that *Pedroncelli* supports Defendant's argument.

Likewise, we are not persuaded that *Brown* supports Defendant's position. In *Brown*, this Court set out factors to use in determining whether multiple thefts must be punished as one larceny. Those factors include "the time between the criminal acts, the location of the property when it was taken, the existence of any intervening events, distinctions in the manner of committing the thefts, the defendant's intent,

and the number of victims." *Brown*, 113 N.M. at 633, 830 P.2d at 185.

Utilizing these factors, this Court in *Brown* recognized "the validity of the single larceny doctrine in New Mexico" and merged two convictions for larceny under $100. *Id.* at 632, 830 P.2d at 184. The defendant in that case was accused of entering an apartment at night and taking gloves and a briefcase from one roommate, and a backpack from another roommate who shared the apartment. We stated:

> There was no evidence that a significant period of time separated the thefts, that the items were taken from locations in which the other owner had no substantial rights, that the thefts were accomplished in diverse manners, that Defendant's intent in committing the two thefts was different, or that the larcenies were separated by an intervening event. The only factor weighing in favor of separate offenses is the number of victims.

*Id.* at 633–34, 830 P.2d at 185–86. However, in the present case, and as we noted above, Defendant's embezzlements occurred on separate dates, they occurred randomly, they involved separate clients, and separate dollar amounts. Thus, we believe under the facts of this appeal that the takings were independent and reflected distinct intents to deprive RMS of separate rental monies.

Therefore, we conclude that the State could properly charge Defendant with seven separate embezzlement counts. The single larceny doctrine does not apply, and we affirm Defendant's convictions for seven counts of embezzlement.

### B. Cross-examination of Defendant's Wife

Defendant contends that the trial court erred in allowing the prosecutor to suggest that Defendant's wife had been fired from a job because she took money. In the present case, Defendant's wife was called to testify on his behalf. She testified about her accounting experience and how she had helped Defendant with his job at RMS. On

cross-examination, the prosecutor asked her about why she was no longer working as the manager of an apartment complex. She responded that the owner of the complex reported that she was not fulfilling part of the contract to his satisfaction. The prosecutor pursued that point by stating: "And that part was that you weren't, in fact, turning over the monies that you get—that tenants gave you; isn't that true?" Defendant objected on the basis that the question went beyond direct examination and that the prosecution was asking about an uncharged crime, which Defendant argued was improper under SCRA 1986, Section 11–608. The objection was overruled and Mrs. Brooks answered that the allegation was untrue.

Defendant relies on *State v. Robinson*, 99 N.M. 674, 662 P.2d 1341, *cert. denied*, 464 U.S. 851, 104 S.Ct. 161, 78 L.Ed.2d 147 (1983), in support of his argument that the State's line of questioning was improper and constituted reversible error. In *Robinson*, an eyewitness to an armed robbery and murder was accused by his former employer of embezzling money after shortages were discovered during an inventory audit, but no criminal action was taken against the eyewitness. During the trial of the armed robbery and murder charges, the prosecutor impeached the eyewitness by suggesting, through the testimony of another employee of the former employer, that the eyewitness had been fired for embezzlement. There, as here, the only evidence of the alleged misconduct was the unsubstantiated belief of the former employer. The Supreme Court in *Robinson* stated that "[t]he impeachment of a witness by insinuations based on unsubstantiated allegations of prior misconduct provides the trier of fact with no information relevant to the witness's credibility and carries a great potential for prejudice." *Id.* at 676, 662 P.2d at 1343. The Court went on to say that "[w]here ... the testimony relates to collateral matters and has no bearing upon the crime with which the defendant is charged, there is also a danger that the real issues of the case may become confused." *Id.* Further, the Supreme Court found that the error was not harm-

less because the witness who was being impeached was one of two eyewitnesses and his credibility was crucial and should not have been subject to impeachment by mere innuendo.

■ SCRA 11–608(B) allows specific instances of conduct, if probative of truthfulness or untruthfulness, to be inquired into on cross-examination in the discretion of the trial court. Our review is for an abuse of that discretion. *See State v. Worley*, 100 N.M. 720, 676 P.2d 247 (1984).

■ Defendant argues that under *Robinson* this evidence is irrelevant and highly prejudicial and should have been excluded as more prejudicial than probative. Defendant argues that by insinuating that Defendant's wife was an embezzler, the prosecution was suggesting that Defendant was related to embezzlers and thereby directed the jury to draw an inference of guilt by association. Furthermore, Defendant argued that since Mrs. Brooks had testified that she suggested ways to improve the accounting system at RMS to her husband, the jury might be led to the conclusion that her suggestions may also have included ways to embezzle from the system. Defendant argues that the prosecutor's question unfairly planted distrust of Mrs. Brooks, and by association, Defendant in the jury's mind. *See State v. Hargrove*, 81 N.M. 145, 147, 464 P.2d 564, 566 (Ct.App.1970) (questions on cross-examination as to misconduct designed to attack credibility "may not be so framed and repeated as to plant in the minds of the jury a distrust of the witness through inferences that he has falsely denied his guilt relating to collateral matters").

However, we conclude that the questioning of Mrs. Brooks was allowable under SCRA 11–608(B) and *Robinson*. In *Robinson*, the State questioned one witness about *another* witness's specific instances of past misconduct. This method of impeachment is improper introduction of extrinsic evidence of prior misconduct under SCRA 11–608(B), and was recognized as such by the *Robinson* Court. The Court wrote that " '[i]f it is improper to prove

[actual misbehavior] by extrinsic testimony on the stand, it is doubly improper to attempt to prove it by hearsay, and trebly improper when accompanied by a prohibition of any rebuttal of the hearsay by the witness or by others on his behalf.' " *Robinson*, 99 N.M. at 676, 662 P.2d at 1343 (quoting 3A J. Wigmore, *Wigmore on Evidence* § 980a (Chadbourn rev. 1970)). In contrast to *Robinson*, the impeaching witness in the instant appeal was also the witness being impeached. Mrs. Brooks was questioned about her own alleged prior misconduct, she denied any misconduct, and no further evidence of prior misconduct was introduced. This procedure is proper. *See State v. Scott*, 113 N.M. 525, 530, 828 P.2d 958, 963 (Ct.App.1991) ("a witness may not be impeached concerning specific acts of misconduct by the testimony of other witnesses, but only by cross-examination of that witness"), *cert. quashed*, 113 N.M. 524, 828 P.2d 957 (1992).

■ Moreover, we believe that the cross-examination of Defendant's wife amounts to harmless error when taking into consideration all the evidence introduced at trial. Excluding her testimony, there exists substantial evidence to uphold Defendant's conviction. The wife's testimony was but a very small portion of the evidence and could not have contributed to Defendant's conviction. *See Sanchez v. State*, 103 N.M. 25, 702 P.2d 345 (1985). In *Sanchez*, the Court stated:

> For error to be considered harmless, there must be (1) substantial evidence to support a conviction without reference to the improperly admitted evidence, (2) such a disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence will appear so minuscule that it could not have contributed to conviction, and (3) no substantial conflicting evidence to discredit State's testimony.

*Id.* at 27, 702 P.2d at 347.

### C. Defendant's Confession

Defendant next argues that the trial court erred in admitting the confession he gave to the private investigator. During a pretrial motions hearing, Defendant argued that the private investigator was an agent of the State, and therefore, Defendant should have received a *Miranda* warning. Defendant based this argument on the fact that the private investigator was a licensed driver by the State of New Mexico. However, we reject this argument for two reasons.

■ First, Mr. Tapia was not an agent of the State of New Mexico. In *State v. Murillo*, 113 N.M. 186, 824 P.2d 326 (Ct. App.1991), this Court set out four factors to consider when evaluating whether a private investigator is acting as an agent of the government for purposes of Fourth Amendment protection against an unreasonable search. Those factors are: "(1) whether the [person] acted under the control of his private employer; (2) whether the [person's] actions clearly related to his private employer's private purposes; (3) whether the search was conducted as a legitimate means of protecting the employer's private property; and (4) whether the methods and manner of the search were reasonable and no more intrusive then necessary." *Id.* at 191, 824 P.2d at 331.

■ Using those criteria as a reference to help us determine whether a private person is acting as an agent for the State, we concur with the trial court's determination that the private investigator, under these circumstances, was not an agent. Therefore, the Fourth Amendment protections were not applicable to the private investigator because those protections do not apply to private individuals acting for their own purposes. *Id.* at 188, 824 P.2d at 328.

■ Second, Defendant's appellate argument was not properly preserved during trial. On appeal, Defendant argues that the private investigator was a State agent because he was acting as the equivalent of a public law enforcement officer. Below, however, Defendant argued that the investigator was a State agent because the investigator was licensed by the State to drive a vehicle. Indeed, Defendant conceded below that the investigator was not

in law enforcement. Defendant's argument below did not sufficiently alert the mind of the trial court. *See State v. Gibbins,* 110 N.M. 408, 410–11, 796 P.2d 1104, 1106–07 (Ct.App.) *cert. denied,* 109 N.M. 631, 788 P.2d 931 (1990).

### D. Entrustment

Defendant argues that his motion for directed verdict should have been granted because the State failed to prove that he was entrusted with tenants' rent money. A motion for directed verdict tests the sufficiency of the evidence. *State v. Maestas,* 92 N.M. 135, 145, 584 P.2d 182, 192 (Ct.App.1978). In reviewing for sufficiency of the evidence, the question is whether substantial evidence exists of either a direct or circumstantial nature to support a verdict of guilty beyond a reasonable doubt with respect to each element of the crime. *State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). The evidence is viewed in the light most favorable to the verdict, resolving all conflicts therein, and indulging all reasonable inferences therefrom in the light most favorable to the judgment. *State v. Lankford,* 92 N.M. 1, 2, 582 P.2d 378, 379 (1978).

Entrustment is an essential element of the crime of embezzlement. SCRA 1986, 14–1641 (Recomp.1986). Entrust means "to 'commit or surrender to another with a certain confidence regarding his care, use, or disposal'" of that which has been committed or surrendered. *State v. Moss,* 83 N.M. 42, 44, 487 P.2d 1347, 1349 (Ct.App.1971) (quoting *Webster's Third New International Dictionary* (1966)).

Here, the evidence was that Defendant was responsible for the money after it was received and placed in the desk drawer. The fact that Defendant did not personally take money from the tenants is not dispositive. All the money received from tenants was to be deposited in the bank. Defendant took the money from the drawer and prepared the deposit slips. He was also responsible for making sure that the books balanced. This is sufficient to show that Defendant was entrusted with the rental money.

Defendant contends that the jury should have been specially instructed on the meaning of the word "entrust," citing *State v. Franklin,* 78 N.M. 127, 428 P.2d 982 (1967). In addition, under *Jackson v. State,* 100 N.M. 487, 672 P.2d 660 (1983), Defendant argues that the trial court has the duty to properly instruct the jury on all essential questions of law. However, *Moss,* 83 N.M. at 44, 487 P.2d at 1349, holds that, absent clearly expressed legislative intent to modify the ordinary meaning of "entrust," no special instruction need be given on the meaning of the word. Therefore, the defendant is not entitled to have the jury specially instructed on the meaning of the word "entrust."

### E. Restitution

Finally, Defendant claims that the trial court had no authority to order restitution to the insurance company that had already paid for the loss to RMS. The statute allowing for restitution makes it the policy of the state that Defendant should make restitution to the victim of his criminal activities. NMSA 1978, § 31–17–1(A) (Cum.Sup.1989). A "victim" is defined as "any person who has suffered actual damages as a result of the defendant's criminal activities." Section 31–17–1(A)(1). There is no question that the insurance company is a person within the meaning of this statute. *See State v. Griffin,* 100 N.M. 75, 77, 665 P.2d 1166, 1168 (Ct.App. 1983). The question is whether the insurance company suffered actual damages as a result of Defendant's activities.

"Actual damages" is defined by the statute as "all damages which a victim could recover against the defendant in a civil action arising out of the same facts." Section 31–17–1(A)(2). Once the insurer pays the claim of its insured, it is deemed to be subrogated to recovery of its payments against the person who caused the loss. *Safeco Ins. Co. of America v. United States Fidelity & Guar. Co.,* 101 N.M. 148, 679 P.2d 816 (1984). Under the rule of subrogation, an insurance company that has paid on a claim may recover in a civil

action from the one who actually caused the loss. *Cf. United States Fidelity & Guar. Co. v. Raton Natural Gas Co.*, 86 N.M. 160, 521 P.2d 122 (1974) (where insurance company not joined as indispensable party to original tort action, it could maintain a separate action against the original tortfeasor). Therefore, under principles of subrogation, the insurance company has been damaged by Defendant's actions. *See State v. Barnett*, 36 Wash.App. 560, 675 P.2d 626 (1984). We interpret the restitution statute to include as a victim an insurance company that has paid on a claim resulting from Defendant's criminal activities. *See State v. Merrill*, 136 Ariz. 300, 665 P.2d 1022 (1982); *People v. Bond*, 99 Mich.App. 86, 297 N.W.2d 620 (1980); *State v. Stayer*, 706 P.2d 611 (Utah 1985); *Barnett*, 675 P.2d at 628.

Defendant argues, however, that criminal sentencing should not be used as a forum for determining civil damages matters. He argues that there are other means for the insurance company to recover the claim it paid. While we agree that there are other ways for the insurance company to recover its paid claim, we do not agree that this is a reason for finding that the insurance company is not a victim.

The reason for allowing restitution against a criminal defendant is not solely to make the victim of the crime whole again, but also to remind a defendant of his wrongdoing and to require him to repay the costs society has incurred as a result of his misconduct. *See State v. Taylor*, 104 N.M. 88, 717 P.2d 64 (Ct.App.), *cert. denied*, 103 N.M. 798, 715 P.2d 71 (1986). These reasons are equally valid when an insurance company has been required to pay a claim because of Defendant's activities. If we were to interpret the restitution as narrowly as Defendant urges, the trial court would be allowed to find that the direct victim of the crime, fully reimbursed by an insurance company, has not suffered any economic loss, thereby precluding an order for restitution at all. *See Merrill*, 136 Ariz. at 301, 665 P.2d at 1023. We believe such a narrow interpretation would improperly limit the purposes of requiring payment of restitution.

Therefore, we hold that the trial court had the authority under the restitution statute to order that Defendant pay restitution to the insurance company that had paid a claim resulting from Defendant's criminal activities.

## IV. THE DISSENT

The dissent, in a thoughtful and well reasoned opinion, makes a strong argument for the inclusion of a jury instruction which would allow the jury to find that Defendant was guilty of a single third degree felony rather than multiple fourth degree felonies. We are concerned that if we adopt the rule urged in the dissent, we will be fundamentally altering the traditional role of the prosecutor to determine what charges should be brought against a particular defendant, this is because if we adopt the position of Defendant, presented in the dissent, we would in effect allow the jury to determine the charge to be brought rather than to simply decide whether the prosecutor has proven the charges brought. It is therefore in deference to the traditional roles of the prosecutor and jury that we adopt the position taken by this opinion.

## V. CONCLUSION

Defendant's conviction of seven counts of embezzlement and his sentence requiring the payment of restitution to the insurance company of RMS are affirmed.

IT IS SO ORDERED.

FLORES, J., concurs.

BIVINS, J., dissents and files opinion.

BIVINS, Judge (dissenting).

Unable to agree with the disposition of the "single larceny doctrine" issue, I respectfully dissent. Based on my analysis of that issue, I would reverse and remand for a new trial. Thus, I would not reach the remaining issues, although I agree with the majority's disposition of those issues.

Relying primarily on *State v. Pedroncelli*, 100 N.M. 678, 675 P.2d 127 (1984), De-

fendant argues that under the proof, he should have been found guilty of only one count of embezzlement over $2500 but less than $20,000, a third degree felony. *See* NMSA 1978, § 30–16–8 (Cum.Supp.1992). Alternatively, Defendant argues that, if it is determined that single versus multiple embezzlements cannot be decided as a matter of law, then the jury should have been instructed as to both. It is with respect to this alternative argument that I address my concerns.

The question presented is who should decide single versus multiple intent—the court, as a matter of law, or the jury, as a question of fact. I would hold that when reasonable minds could differ as to whether there was a single intent to embezzle or multiple intents to embezzle, then the jury should decide the question as a matter of fact under proper instructions.

I start my discussion with *Pedroncelli*. In that case, the State charged the defendant with one count of embezzlement over $2500 in violation of Section 30–16–8, a third degree felony. The defendant appealed her conviction of that one count, arguing that there were multiple separate acts of embezzlement of over $100 but not more than $2500, all fourth degree felonies. The Court of Appeals concluded that the State could have charged the defendant with thirty-six counts, but chose to charge only one. This Court reversed on the basis that numerous embezzlements could not be aggregated to promote numerous fourth degree felonies to the status of a single third degree felony. The Supreme Court reversed the Court of Appeals and affirmed the conviction on the one count of third degree felony.

While noting distinctions between embezzlement and larceny, the Supreme Court in *Pedroncelli* utilized the "single larceny doctrine" and found but one crime. Notwithstanding, the Court recognized that "the factfinder may ... evaluate the evidence to determine if one protracted intention accompanies the several takings or conversions that may be implicated within a single charge." *Id.* at 681, 675 P.2d at 130. But if the jury, as in the case before

us, is not given the choice, how can it find that there was only one single embezzlement? Therein lies the problem.

In *State v. Brown*, 113 N.M. 631, 830 P.2d 183 (Ct.App.), *cert. denied*, 113 N.M. 636, 830 P.2d 553 (1992), this Court considered whether two convictions for larceny under $100 merged. We held they did and remanded so that the district court could vacate one of the defendant's convictions for larceny under $100. In reaching that result, we relied on the factors set forth by the Supreme Court in *Herron v. State*, 111 N.M. 357, 805 P.2d 624 (1991), to determine whether the larcenies were separate and distinct. In refining those factors for application in a multiple larceny case, we said in *Brown* that the factors include: "the time between the criminal acts, the location of the property when it was taken, the existence of any intervening events, distinctions in the manner of committing the thefts, the defendant's intent, and the number of victims." *Id.* at 633, 830 P.2d at 185. Finding no evidence that the thefts were separated by a significant period of time, that the stolen items were taken from different locations in which the other victim had few rights, that the thefts were committed in different manners, that the defendant's intent was different, or that the thefts were separated by an intervening event, we held that there was only a single larceny. This Court in *Brown* concluded that under either the single larceny doctrine or the *Herron* approach, the result reached would be the same. Did this Court in *Brown* reach its conclusion of a single larceny on the basis that reasonable minds could not differ so that the question could be decided as a matter of law? It would appear so.

It would also appear that the Supreme Court in *Herron* reached the same conclusion. The Supreme Court reduced nineteen second degree criminal sexual penetration convictions to five. Similarily, this Court in *State v. Mares*, 112 N.M. 193, 812 P.2d 1341 (Ct.App.), *cert. denied*, 112 N.M. 235, 814 P.2d 103 (1991), in reducing multiple batteries to one, concluded that reasonable minds could not differ as to the number of

crimes committed. We did note in *Mares*, however, the question of what standard should apply if reasonable minds could differ. We said that "[p]erhaps retrial would be indicated, so the issue could be decided by the fact finder under proper instructions. *Herron*, however, did not address that issue." *Id.*, 112 N.M. at 200, 812 P.2d at 1348. *Herron* did not decide the issue, but I think this Court must, since it has been put squarely before us by Defendant.

I read *Brown* and *Mares* as utilizing the *Herron* factors to determine whether, as a matter of law, reasonable minds could differ on the question of single versus multiple criminal impulses. At the trial level, it seems more appropriate to submit to the jury, if there is supporting evidence, a simple instruction that would allow the jury to find a single embezzlement if it finds a single, sustained criminal impulse or intent. I offer such an instruction later in this opinion.

Given the criteria defined in *Brown*, I think that reasonable minds could differ, in this case, as to whether there was only one embezzlement or multiple embezzlements. The alleged embezzlements took place at different times from June 19, 1989, to July 26, 1989, a period of about five weeks. How can it be said, as a matter of law, that Defendant's intent to embezzle stopped after each conversion and resumed anew with the next? Based on the record, it would not be unreasonable to find that there was but a single impulse to embezzle, and that this impulse was carried out in a series of conversions over a period of time.

If reasonable minds can differ, there is an additional reason to allow the jury to decide the issue of single versus multiple embezzlements. Depending on the dollar amounts involved in each transaction, it may be to a defendant's advantage to have either one conviction (this case) or several convictions (*Pedroncelli*). As long as there is evidence to support Defendant's theory, he is entitled to an instruction on the issue. *See State v. Castrillo*, 112 N.M. 766, 769, 819 P.2d 1324, 1327 (1991) (if evidence supports theory of case, the defendant is entitled to instruction on that theory).

That the existence of a single crime or multiple crimes should be decided by the fact-finder under proper instructions is supported by case law from other jurisdictions. *See State v. Vining*, 2 Wash.App. 802, 472 P.2d 564, 568 (1970) (whether successive takings result from multiple, independent criminal impulses, or result from a single, continuing criminal impulse, is a factual question which must be determined by the jury under appropriate instruction); *see also State v. Johnston*, 478 N.W.2d 281, 286 (S.D.1991) (Miller, C.J., dissenting) (dissent cites rule, well supported by authority, expressly recognizing that the existence of a continuous intent, scheme, or plan is a question for the jury (citing, among other cases, *Pedroncelli* and *State v. Allen*, 59 N.M. 139, 280 P.2d 298 (1955))). *See generally* Peter G. Guthrie, Annotation, *Series of Takings Over a Period of Time as Involving Single or Separate Larcenies*, 53 A.L.R.3d 398, 407–09 (1973).

The Uniform Jury Instructions do not provide an instruction to guide the jury in determining whether multiple thefts constitute one embezzlement or multiple embezzlements. I think one could be fashioned along the following lines:

> Evidence has been presented that Defendant committed only one, as opposed to several, embezzlements. A defendant commits only one, as opposed to several, embezzlements when he is motivated by a single, continuing, sustained criminal impulse in execution of one general scheme. To find Defendant guilty of more than one embezzlement, the burden is on the State to prove beyond a reasonable doubt that each act was the result of a separate and independent criminal impulse.

Defendant acknowledges he did not tender an instruction. He argues he should not be penalized because the case law on the issue is less than clear. I agree, but note that a tendered instruction was probably unnecessary. Defendant filed and argued a pretrial motion on this very issue, which the district court rejected.

Thus, I would reverse and remand for a new trial so that the jury can, under proper instruction, decide whether there was one or several embezzlements. In making his argument for a single conviction, Defendant undoubtedly understands that by aggregating the several dollar amounts, it is possible that a conviction will result in a third degree felony. *See* § 30–16–8.