214 P.3d 1125

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Afa TUIALII, Defendant–Appellant.**

**No. 29239.**

Intermediate Court of Appeals of Hawai'i.

June 30, 2009.

Craig W. Jerome, Deputy Public Defender, on the briefs, for Defendant–Appellant.

Delanie D. Prescott–Tate, Deputy Prosecuting Attorney, on the briefs, for Plaintiff–Appellee.

NAKAMURA, Presiding Judge, FUJISE and LEONARD, JJ.

Opinion of the Court by LEONARD, J.

Defendant–Appellant Afa Tuialii **(Tuialii)** appeals from the Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion For Correction Of Illegal Sentence **(Rule 35 Order)**, filed on June 4, 2008 in the Circuit Court of the First Circuit **(Circuit Court).**[1]

Tuialii, a former payroll and accounts payable clerk, was charged with Theft in the First Degree, in violation of Haw.Rev.Stat. **(HRS)** § 708–830.5(1)(a) (Supp.2007), stemming from the transfer of over $76,000 from his employer's payroll account into his personal credit union account. Tuialii pled no contest to the charge and was sentenced to five years of probation and one year in jail (which was suspended except for time served). Tuialii was also ordered to pay

---

1. The Honorable Virginia Lea Crandall presided.

restitution in the amount of $76,285.19 to his employer, Principle Hotels, LLC (**Principle**).

On appeal, Tuialii contends that the Circuit Court erred by denying his Motion for Correction of Illegal Sentence (**Rule 35 Motion**) because the Circuit Court failed to conduct a colloquy which advised him that restitution could be ordered as a consequence of his plea, thus rendering his no-contest plea unknowing and involuntary. Tuialii claims that the "illegal" restitution order must be vacated or Tuialii must be allowed to withdraw his plea. Tuialii further claims that restitution cannot be ordered because the victim received indemnification from its insurance company. We reject both arguments and affirm.

## I. BACKGROUND

Tuialii was employed by Principle from October 2005 until some time after the theft was discovered. As a payroll and accounts payable clerk, his duties included entering information into payroll and accounting systems and processing vendor invoices. In early February of 2007, Principle's chief financial officer noticed irregularities in Principle's payroll records. Through an investigation, it was discovered that money from Principle's account was being directly deposited into Tuialii's credit union account. After initially denying any knowledge of the transfers, Tuialii admitted that he was responsible for the unauthorized transfer of funds into his account, which included ten deposits totaling over $76,000.

After the matter was reported to the Honolulu Police Department, on March 8, 2007, Tuialii was charged with Theft in the First Degree. On September 6, 2007, Tuialii pled no contest to the charge. The no-contest plea stated in part:

6. I understand that the court may impose any of the following penalties for the offense(s) to which I now plead: the maximum term of imprisonment, any extended term of imprisonment, and any mandatory minimum term of imprisonment specified above; consecutive terms of imprisonment (if more than one charge); restitution; a fine; a fee and/or assessment; community service; probation with up to one year of imprisonment and other terms and conditions.

At sentencing, the State requested that Tuialii be sentenced to prison and ordered to pay restitution in the amount of $76,285.19, the amount established at a preliminary hearing.

On November 26, 2007, the Circuit Court found Tuialii guilty and sentenced him to five years of probation and one year of imprisonment, which was suspended except for time served. The special conditions of probation included, *inter alia*, restitution in the amount of $76,285.19 to Principle and referenced a free-standing order for restitution.

On February 7, 2008, Tuialii filed a Motion for Reconsideration of Sentence based in part on his possession of a $10,000 check, which Tuialii intended as an "upfront payment of restitution as mitigation" and other matters which Tuialii submitted in support of his reconsideration request. Although not entirely clear from the motion, it appears that Tuialii was requesting that the court reconsider its denial of Tuialii's earlier request for a deferred acceptance of a no-contest plea. Tuialii does not appeal from the Circuit Court's June 4, 2008 order denying the motion for reconsideration.

On February 8, 2008, the Circuit Court entered a "Free–Standing Order of Restitution," pursuant to HRS §§ 706–605(7), 706–644(5), and 706–630, ordering that Tuialii pay restitution in the amount of $76,285.19. The Free–Standing Order provides that Tuialii's obligation to pay restitution survives the November 26, 2007 Judgment, Guilty Conviction and Sentence and continues in effect even after Tuialii's five-year term of probation expires.

On February 8, 2008, Tuialii filed the Rule 35 Motion, pursuant to Hawai'i Rules of Penal Procedure (**HRPP**) Rule 35. Tuialii claimed that his sentence was illegal because there was no verified loss to Principle since Principle was paid $87,093.25, less a $500.00 deductible, by its insurance company. On June 4, 2008, the Circuit Court entered the Rule 35 Order, rejecting Tuialii's request for relief. Tuialii timely filed a notice of appeal.

## II. *POINTS OF ERROR*

Tuialii raises the following two points of error on this appeal:

1. The order of restitution is invalid because the Circuit Court failed to engage in a colloquy with Tuialii to determine that he understood that restitution could be imposed as a punishment and consequence of his no-contest plea; and

2. The order of restitution was illegal because it ordered Tuialii to pay restitution to Principle for amounts which had been previously indemnified by Principle's insurer.

## III. *STANDARDS OF REVIEW*

A circuit court's denial, based on a conclusion of law, of a defendant's HRPP Rule 35 motion to correct illegal sentence is reviewed *de novo,* under the right/wrong standard of review. Questions of constitutional law and statutory interpretation are reviewed under the same standard. *State v. Kido,* 109 Hawai'i 458, 461, 128 P.3d 340, 343 (2006).

"Normally, an issue not preserved at trial is deemed to be waived. But where plain errors were committed and substantial rights were affected thereby, the errors may be noticed although they were not brought to the attention of the trial court." *State v. Fagaragan,* 115 Hawai'i 364, 367–68, 167 P.3d 739, 742–43 (2007) (internal quotation marks, citations, and brackets omitted).

## IV. *DISCUSSION*

A. *Tuialii's Request to Vacate the Restitution Order Based on an Allegedly Inadequate Colloquy*

1. *Tuialii Failed to Seek to Withdraw His Plea*

Tuialii argues that the Circuit Court plainly erred when it failed to ensure that Tuialii entered a plea voluntarily and knowingly. Tuialii claims that, in his colloquy with the Circuit Court, he was not advised that restitution could be imposed as part of his sentence, thus, he did not understand the consequences of his no-contest plea. Tuialii argues that the Circuit Court should have ensured that he fully understood the consequences of his plea pursuant to HRPP Rule 11(d). On appeal, Tuialii requests that this court remand the case with instructions to allow him to withdraw his no-contest plea.

A defendant does not, however, enjoy an absolute right to withdraw his or her guilty or no-contest plea. *See State v. Topasna,* 94 Hawai'i 444, 451, 16 P.3d 849, 856 (App.2000) (citing *State v. Merino,* 81 Hawai'i 198, 223, 915 P.2d 672, 697 (1996)). HRPP Rule 32(d) provides:

A motion to withdraw a plea of guilty or of nolo contendere may be made before sentence is imposed or imposition of sentence is suspended; provided that, to correct manifest injustice the court, upon a party's motion submitted no later than ten (10) days after imposition of sentence, shall set aside the judgment of conviction and permit the defendant to withdraw the plea. *At any later time, a defendant seeking to withdraw a plea of guilty or nolo contendere may do so only by petition pursuant to Rule 40 of these rules* and the court shall not set aside such a plea unless doing so is necessary to correct manifest injustice.

(Emphasis added.)

Tuialii did not move to withdraw his plea within ten days after sentencing. Therefore, to seek relief from his no-contest plea, Tuialii was required to file a petition pursuant to HRPP Rule 40. *See* HRPP Rule 32(d). Tuialii failed to avail himself of this option. Tuialii instead filed a petition pursuant to HRPP Rule 35, arguing only that the restitution condition of his probation sentence was illegal because the victim, Principle, was reimbursed by its insurer. We reject Tuialii's request to remand this case to allow withdrawal of his no-contest plea.

2. *No Further Colloquy Was Required*

Tuialii claims that he was not personally advised in open court, pursuant to HRPP Rule 11(c)(2), that restitution could be imposed as part of his sentence. Tuialii argues that since he did not know the court could order him to pay restitution, his sentence is

illegal and he should be resentenced without being ordered to pay restitution.

■ The plain language of HRPP Rule 11(c)(2) requires that the court advise a defendant of the maximum penalty provided by law and maximum extended term of imprisonment. The Circuit Court orally advised Tuialii that the maximum sentence that could be imposed for Theft in the First Degree was ten years of imprisonment and a fine of $20,000. Tuialii's written no-contest-plea form, which he confirmed he had read carefully and discussed with his attorney, states that he may be subject to restitution. Indeed, in later arguing for reconsideration of his sentence, Tuialii argued that he was prepared to tender a check for $10,000 for a restitution payment "and has been doing everything he can to get some money together." The Circuit Court was not required by HRPP Rule 11(c)(2) to further advise Tuialii that restitution may be imposed as part of his sentence. The Circuit Court complied with HRPP Rule 11. Nevertheless, Tuialii urges this court to expand Hawai'i jurisprudence and mandate that plea-related colloquies include advisements regarding possible orders for restitution.[2] We decline to do so.

B. *The Restitution Component of Tuialii's Sentence Is Not Rendered Illegal Because Principle Had Insurance*

Tuialii contends that any order requiring him to pay restitution in an amount greater than $500 is an illegal sentence because Principle's insurer indemnified Principle for its loss, subject to a $500 deductible. Tuialii presents three arguments in support: (1) an insurance-company indemnitor is not a victim entitled to restitution under HRS § 706–646; (2) the plain language of HRS § 706–646 disallows restitution if the victim has re-

ceived indemnification from an insurer; and (3) requiring a defendant to make restitution to an insurance-indemnified victim is inconsistent with the rehabilitative and compensatory purposes of restitution. Based on our review of the Hawai'i statutes providing for restitution to crime victims, and related authorities, we conclude that Tuialii is not entitled to relief on any of these grounds.

We begin with the applicable statutes. Restitution was ordered in this case pursuant to HRS § 706–605(7), which provides:

(7) The court shall order the defendant to make restitution for losses as provided in section 706–646. In ordering restitution, the court shall not consider the defendant's financial ability to make restitution in determining the amount of restitution to order. The court, however, shall consider the defendant's financial ability to make restitution for the purpose of establishing the time and manner of payment.

HRS § 706–646 expands on the restitution mandate, defining crime victim and specifying the amount and manner of victim restitution:

§ 706–646 **Victim restitution.** (1) As used in this section, "victim" includes any of the following:

(a) The direct victim of a crime including a business entity, trust, or governmental entity;

(b) If the victim dies as a result of the crime, a surviving relative of the victim as defined in chapter 351; or

(c) A governmental entity which has reimbursed the victim for losses arising as a result of the crime.

(2) The court shall order the defendant to make restitution for reasonable and verified losses suffered by the victim or vic-

---

**2.** It appears from the cases cited in the parties' briefs that some jurisdictions hold that restitution is a direct consequence of entering a guilty plea and, therefore, the judge must inform a defendant that restitution may be imposed. *See, e.g.,* *State v. Banuelos,* 124 Idaho 569, 573, 861 P.2d 1234, 1238 (App.1993); *Holland v. U.S.,* 584 A.2d 13, 15–16 (D.C.1990); *Keller v. State,* 723 P.2d 1244, 1247 (Wyo.1986). However, a number of other states have found restitution to be a collateral consequence of a guilty or no contest plea. *See, e.g., State v. Brady,* 442 N.W.2d 57, 59

(Iowa 1989); *Cruz v. State,* 742 So.2d 489, 490 (Fla.App.1999); *State v. Parker,* 244 Wis.2d 145, 150–51, 629 N.W.2d 77, 80 (App.2001); *State v. Samuels,* 253 N.J.Super. 335, 341, 601 A.2d 784, 787 (1991). We consider the latter cases to be more consistent with Hawai'i case law, which views restitution as a "quasi-civil" compensatory sanction, an "adjunct of punishment of the offender," in contrast to a fine, which advances punitive objectives. *State v. Gaylord,* 78 Hawai'i 127, 150–54, 890 P.2d 1167, 1190–94 (1995).

tims as a result of the defendant's offense when requested by the victim. The court shall order restitution to be paid to the crime victim compensation commission in the event that the victim has been given an award for compensation under chapter 351.[3] If the court orders payment of a fine in addition to restitution or a compensation fee, or both, the payment of restitution and compensation fee shall have priority over the payment of the fine, and payment of restitution shall have priority over payment of a compensation fee.

(3) In ordering restitution, the court shall not consider the defendant's financial ability to make restitution in determining the amount of restitution to order. The court, however, shall consider the defendant's financial ability to make restitution for the purpose of establishing the time and manner of payment. The court shall specify the time and manner in which restitution is to be paid. Restitution shall be a dollar amount that is sufficient to reimburse any victim fully for losses, including but not limited to:

(a) Full value of stolen or damaged property, as determined by replacement costs of like property, or the actual or estimated cost of repair, if repair is possible;

(b) Medical expenses; and

(c) Funeral and burial expenses incurred as a result of the crime.

(4) The restitution ordered shall not affect the right of a victim to recover under section 351-33 or in any manner provided by law; provided that any amount of restitution actually recovered by the victim under this section shall be deducted from any award under section 351-33.

(Footnote added.)

### 1. Tuialii Was Ordered to Pay Restitution to His Victim

■ Tuialii contends that an insurer is not entitled to restitution because an insurer is not a "victim" within the meaning of HRS § 706-646(1). We agree that Principle's in-

surer is not a "direct victim" pursuant to HRS § 706-646(1). However, Tuialii was ordered to pay restitution to Principle, the direct victim of Tuialii's crime, not Principle's insurer. Therefore, Tuialii's sentence complied with HRS § 706-646(1).

### 2. The Plain Language of HRS § 706-646 Does Not Support Tuialii's Argument

■ Tuialii argues that, under the plain language of HRS § 706-646, a crime victim who has received indemnification from an insurer has not suffered a "loss" within the meaning of the statute. It is not necessary to parse the alternative dictionary definitions of the word "loss," as Tuialii urges us to do in his brief, to understand whether Principle suffered a loss under HRS § 706-646. Tuialii does not challenge the fact that he stole over $76,000 from Principle or the evidence verifying the amount of money stolen from Principle's account. There are no words in the statute, and no definition of the words in the statute, that require examination of the insured/uninsured status of the victim to determine whether the theft of $76,000 constitutes a loss under HRS § 706-646. On the contrary, the statute plainly states that losses include the "[f]ull value of stolen or damaged property." HRS § 706-646(3)(a). In effect, Tuialii urges this court to insert language into the statute that creates an exception for or reduction of restitution due to insured victims. However, the only exception or reduction plainly stated in the statute is that any amount actually recovered by the victim from the criminal should be deducted from the amount the victim might recover from the crime victim compensation special fund pursuant to HRS § 351-33. HRS § 706-646(4). Tuialii's argument is without merit.

### 3. Neither the Compensatory Nor the Rehabilitative Purposes of the Restitution Statute Are Inconsistent with Requiring Restitution to Insured Victims

■ Tuialii claims that the purpose and legislative history of HRS § 706-646 support

---

**3.** HRS Chapter 351 provides for the establishment of a crime victim compensation commission empowered to award compensation to crime victims, subject to statutory limits, from a crime victim compensation special fund.

the conclusion that "a trial court may not legally order a criminal defendant to make restitution for amounts previously indemnified by insurance."

We agree with Tuialii's assertion that the legislative history of the original 1975 restitution statute demonstrates that the Legislature had two intended purposes when adopting restitution as a component of Hawai'i criminal law:

> [I]n the criminal justice system, the victim of crime is almost always neglected. By requiring the "convicted person" to make restitution and reparation to the victim, *justice is served.* In so doing, the criminal repays not only "society" but the persons injured by the criminal's acts. There is a dual benefit to this concept: The victim is repaid for his loss and the criminal may develop a degree of self-respect and pride in knowing that he or she has righted the wrong committed.

Sen Stand. Comm. Rep. No. 789, in 1975 Senate Journal, at 1132 (emphasis added); *See also Gaylord,* 78 Hawai'i at 152, 890 P.2d at 1192 (discussing restitution's rehabilitative component).

In addition, in 1998, HRS Chapter 706 was amended to establish HRS § 707–646 to make it easier for crime victims to enforce a criminal restitution order. Although the purpose and findings section of the original 1998 House Bill (No. 2776) was removed prior to its enactment of Act 296, the Conference Committee Report states:

> The purpose of this bill is to allow victims of crime to enforce a criminal restitution order in the same manner as a civil judgment. In addition, this bill allows the court to order restitution to be paid to the Criminal Injuries Compensation Commission (CICC) if the victim has been awarded compensation by the CICC.
>
> . . . .
>
> There are few other options. Although the CICC helps victims by providing some compensation, victims of property crimes and some violent crimes are not eligible for any compensation from the CICC. And although a victim may bring a civil action against the defendant, this process is costly and time consuming.

> Therefore, your Committee on Conference believes that victims should have a "fast track" ability to be compensated for their losses by allowing them to enforce the criminal restitution order as a civil judgment, using all of the civil collection remedies.

Conf. Comm. Rep. No. 89, in 1998 House Journal, at 986, 1998 Senate Journal, at 780.

We nevertheless reject Tuialii's assertion that "[o]rdering a defendant to make restitution to a victim for damages that have been indemnified by insurance, however, advances neither of these purposes and may, in fact, substantially frustrate both of them." Numerous other courts have held that payment by an insurer does not affect the amount of restitution that a defendant must pay. *See, e.g., Benton v. State* 711 A.2d 792, 798 (Del. 1998); *State v. Brooks,* 116 N.M. 309, 316, 862 P.2d 57, 64 (N.M.Ct.App.1993), rev'd in part on other grounds, 117 N.M. 751, 877 P.2d 557 (1994); *United States v. Clark,* 901 F.2d 855, 857 n. 3 (10th Cir.1990); *Jarawdi v. State,* 521 So.2d 261, 262 (Fla.Dist.Ct.App. 1988); *Commonwealth v. Kerr,* 298 Pa.Super. 257, 260–61, 444 A.2d 758, 760 (1982); *State v. Merrill,* 136 Ariz. 300, 301, 665 P.2d 1022, 1023 (Ariz.Ct.App.1983); *State v. Rose,* 45 Or.App. 879, 882–83, 609 P.2d 875, 876–77 (1980); *United States v. Searing,* 250 F.3d 665, 668 (8th Cir.2001); *United States v. Sleight,* 808 F.2d 1012, 1022 (3d Cir.1987); *State v. Westerman,* 945 P.2d 695, 699, n. 4 (Utah App.1997); *but see State v. Martin,* 140 Ohio App.3d 326, 337, 747 N.E.2d 318, 326 (2000). In *People v. Birkett,* 21 Cal.4th 226, 246, 87 Cal.Rptr.2d 205, 220, 980 P.2d 912 (1999), construing a similar restitution statute, the California Supreme Court concluded that "the criminal restitution scheme should always require the offender to pay the full cost of his crime, receiving no windfall from the fortuity that the victim was otherwise reimbursed, but that the rights of reimbursing third parties, aside from the state's own Restitution Fund, should be resolved in other contexts." The court explained its reasoning:

> It appears clear from this language that the Legislature intended to require a pro-

bationary offender, for rehabilitative and deterrent purposes, to make *full* restitution for all losses *his crime had caused, and* that such reparation should go entirely to *the individual or entity the offender had directly wronged,* regardless of that victim's reimbursement from other sources. Only the Restitution Fund was eligible to receive any part of the full restitutionary amount otherwise due to the immediate victim.

Thus, except as against the Restitution Fund, the immediate victim was entitled to receive from the probationer the full amount of the loss caused by the crime, regardless of whether, in the exercise of prudence, the victim had purchased private insurance that covered some or all of the same losses. Third parties other than the fund, such as private insurers, who had already reimbursed the victim were thus left to their separate civil remedies, if any, to recover any such prior indemnification either from the victim or from the probationer.

*Id.*

We find the rationale in *Birkett* persuasive. Ordering Tuialii to repay the full amount of losses without reduction for amounts paid by insurance furthers the rehabilitative purposes of HRS § 706–646 to the greatest extent possible. If Tuialii is not required to pay any restitution, he will not have righted the wrong that he committed and no rehabilitative purpose is achieved. The interests of justice would *not* be served by allowing a thief to retain or otherwise benefit from the spoils of his crime simply because he picked a victim who was prudent enough to have obtained insurance.

 We also reject Tuialii's assertion that either Principle or its insurer might receive a double recovery. We are confident that legal or equitable principles, properly raised, will preclude any double recovery against Tuialii in a civil action or any unjust enrichment of either Principle or its insurer. *See, e.g., State Farm Fire and Casualty Co. v. Pacific Rent–All, Inc.,* 90 Hawai'i 315, 328, 978 P.2d 753, 766 (1999) ("an insurer which pays a claim against an insured for damages caused by the ... wrongdoing of a third party is entitled to be subrogated to the insured's rights against such party") (internal quotation marks and citation omitted). As noted by a Washington appellate court facing a similar argument:

> We do not address whether [the defendant] is correct about [the insurer]'s subrogation rights, because we reject his premise. The court's authority to order restitution in a criminal proceeding is not dependent upon the viability of related civil claims.
>
> The concepts of the civil law are compensatory, not punitive, and are not easily imported into the penal statutes.... We are unable to discern why civil doctrines such as the subrogation rules have any place in interpretation of criminal statutes. Just as the criminal process should not be used as a means to enforce civil claims, the rules of the civil law should not be imported as a limitation to the sentencing authority granted by the legislature to criminal courts. The questions the sentencing court must answer are whether the claimed loss resulted from the crime, and whether it is the kind of loss for which restitution is authorized. If so, the statute plainly grants discretion to make a restitution award. The statute requires no inquiry about the viability of civil claims, nor is any such inquiry called for by public policy.

*State v. Ewing,* 102 Wash.App. 349, 353–54, 7 P.3d 835, 837–38 (2000). Although distinctions can be drawn between Washington's criminal restitution scheme and Hawai'i's, the basic point is a sound one. A criminal court need not sort out insurance indemnities, subrogation rights, and/or other potential civil law implications before ordering a thief or other criminal to repay his victim under the criminal restitution statute.

## V. CONCLUSION

For these reasons, the Circuit Court's June 4, 2008 Rule 35 Order is affirmed.