This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

**v.**                                                              **No. 32,272**

**MATTHEW LEWIS KIRK,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Mark Terrence Sanchez, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Templeman and Crutchfield
Barry C. Crutchfield
Lovington, NM

for Appellant

## MEMORANDUM OPINION

**SUTIN, Judge.**

Defendant appeals his conviction for one count of larceny over $20,000. [MIO unnumbered page 1; RP 134]  This Court issued a notice of proposed summary disposition proposing to affirm, and Defendant filed a timely memorandum in opposition.  We considered the arguments made in Defendant's memorandum in opposition, but are not persuaded that our proposed disposition is in error.  Therefore, we affirm Defendant's conviction.

In his docketing statement and memorandum in opposition, Defendant claims that he was wrongfully convicted of larceny because the evidence was only sufficient to establish embezzlement.  [MIO 1, 5-7; DS unnumbered pages 6-7]  "Larceny consists of the stealing of anything of value which belongs to another."  NMSA 1978, § 30-16-1(A) (2006).  To convict Defendant of larceny over $20,000, the State had to prove beyond a reasonable doubt that Defendant "took and carried away copper wire, belonging to another, which had a market value[] over $20,000[, and a]t the time he took this property, [he] intended to permanently deprive the owner of it[.]"  [RP 92]  *See* UJI 14-1601 NMRA; *State v. Smith*, 104 N.M. 729, 730, 726 P.2d 883, 884 (Ct. App. 1986) ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured.").

"Embezzlement consists of a person embezzling or converting to the person's own use anything of value, with which the person has been entrusted, with fraudulent

2

intent to deprive the owner thereof." NMSA 1978, § 30-16-8(A) (2007). " 'Entrustment' occurs when property is committed or surrendered to another with a certain confidence regarding the care, use, or disposal of that property." *State v. Archie*, 1997-NMCA-058, ¶ 4, 123 N.M. 503, 943 P.2d 537. The distinction between larceny and embezzlement is that only in embezzlement is the defendant entrusted with his employer's money or property and allowed to exercise some discretion as to how that money or property will be used. *See State v. Eder*, 103 N.M. 211, 214-15, 704 P.2d 465, 468-69 (Ct. App. 1985).

As discussed in our notice, the evidence introduced at trial showed that Defendant was employed by B & D Industries, Inc. and was supervised by the general manager, Ed Stevens. [MIO 5; DS 1, 4] Defendant was employed as a "yard boy" to perform general labor activities at a construction site on a Louisiana Energy Services project. [MIO 5; DS 1, 4] Defendant collected copper scraps and wire at the construction site, took the copper to Hobbs Iron and Metal, sold the copper, and gave the proceeds to Mr. Stevens, who then split the proceeds with Defendant. [MIO 5-6; DS 1-2, 5]

B&D Industries hired investigators to investigate the suspected unauthorized sale of the copper scrap, and Defendant told the investigators that Mr. Stevens had told him to do the collection and sale and that Mr. Stevens had told Defendant he

3

would split the proceeds of the sale with Defendant. [MIO 5-6; DS 1-2, 5] The investigators testified as to Defendant's statements to them, and they testified that Mr. Stevens had told them that he had instructed Defendant to collect and sell the copper wire so that he and Defendant could split the proceeds. [MIO 5-6; DS 2, 5-6]

There was no testimony that B&D Industries authorized Mr. Stevens or Defendant to take the materials belonging to B&D Industries or to sell these materials for their own benefit. [DS 4-5] Troy Beall, the president of B&D Industries, testified that B&D Industries had a policy that all wire/supplies that were not used on the construction project were to be returned to the company storage area and all scrap items were to be sold and the money paid to B&D Industries. [MIO 6; DS 4-5]

Mr. Beall testified that only once he had authorized Mr. Stevens to sell copper scrap to fund a party and for tools needed for a project. [DS 5] Defendant does not suggest that there was any testimony that Mr. Stevens was authorized to sell the copper scrap on more than the one occasion or any testimony that Defendant was authorized to do anything with the copper scraps. To the contrary, Mr. Beall testified that he hired investigators to determine if other unauthorized sales were taking place. [DS 5]

Defendant claims that, given B&D Industries' policy to sell the copper scrap items, it was clear that Mr. Stevens, as a supervisor, had the authority to direct the

sales of such scraps. [MIO 6] We are not persuaded because there was no testimony that Mr. Stevens was ever authorized to direct the sale of the copper scraps except on one isolated occasion. [DS 5] Moreover, even if Mr. Stevens had been authorized to make a sale in the past, that authority does not warrant a conclusion as a matter of law that Defendant was in turn entrusted with the copper scraps or entrusted to exercise his discretion over the sale or other disposition of the copper scraps. [MIO 6] *See Eder*, 103 N.M. at 214-15, 704 P.2d at 468-69.

In his memorandum in opposition, Defendant cites to a number of cases concerning defendants who were charged with embezzlement and then claims that he cannot be convicted of larceny because the evidence shows that he was in lawful possession of the copper at one time and, only after being entrusted with the copper wiring, did he convert it to his own use. [MIO 3-4] *See, e.g.*, *State v. Pedroncelli*, 100 N.M. 678, 679, 675 P.2d 127, 128 (1984) (affirming the defendant's conviction for one count of embezzlement over $2500 when she used her position as secretary-treasurer of the union, which made her custodian of the credit union funds, to negotiate numerous checks and cash withdrawal vouchers); *State v. Brooks*, 116 N.M. 309, 311-12, 862 P.2d 57, 59-60 (Ct. App. 1993) (affirming the defendant's convictions for seven counts of embezzlement when he took money from his employer and noting that the defendant was the bookkeeper for his employer with

"responsibilities [that] included . . . making deposits, balancing check books, and other general financial matters"), *aff'd in part, rev'd in part on other grounds*, 117 N.M. 751, 877 P.2d 557 (1994).

We are unpersuaded. In the cases cited by Defendant, the defendants were authorized to collect and deposit money by their employers. *See Pedroncelli*, 100 N.M. at 679, 675 P.2d at 128; *Brooks*, 116 N.M. at 311-12, 862 P.2d at 59-60. In this case, Defendant was a "yard boy" hired to perform general labor activities at a construction site. [MIO 5; DS 1, 4] There was no evidence that B&D Industries entrusted Defendant with selling the copper; instead, the evidence only showed that Defendant's supervisor, Mr. Stevens formulated a plan with Defendant to sell the copper for their mutual illegal gain. Thus, even if Defendant is correct that all of the evidence offered by the State showed that Defendant sold the copper scrap at the direction of Mr. Stevens [DS 3], we are not convinced that the evidence would only support a conviction for embezzlement, not larceny. [MIO 7]

Instead, the jury could believe that even if Defendant used the copper materials, including the scraps in performing his employment duties, he was not authorized to use his discretion in disposing of the scraps. *See State v. Robertson*, 90 N.M. 382, 384-85, 563 P.2d 1175, 1177-78 (Ct. App. 1977) (affirming the defendant's conviction for larceny and opining that an employee's physical control over "property

6

entrusted to him by his employer is merely custody and not possession" (internal quotation marks and citation omitted)); *cf. State v. Kovach*, 2006-NMCA-122, ¶¶ 4, 14, 140 N.M. 430, 143 P.3d 192 (holding that the defendant could not be convicted of embezzlement when she took pre-signed checks from the filing cabinet, filled them out, and completed them for her own benefit because, even though she had access to the pre-signed checks for purposes of copying and filing them, she was not entrusted to take possession or control of them). We affirm Defendant's conviction for larceny because even though he had access to the copper scraps because of his employment, there was no evidence indicating that B&D Industries gave him the authority to use his discretion to determine what should be done with the copper scraps nor was he authorized to sell them. *See Kovach*, 2006-NMCA-122, ¶ 16 (holding that there was insufficient evidence of entrustment because the defendant "had no discretion or authority in regard to pre-signed checks"); *Eder*, 103 N.M. at 214-15, 704 P.2d at 468-68 (holding that " '[e]ntrust' means to commit or surrender to another with a certain confidence regarding his care, use[,] or disposal of that which has been committed or surrendered" and explaining that "[a] clerk taking money from his employer's till is guilty of larceny unless he is authorized to dispose of such money at his discretion").

Therefore, for the reasons set forth in this Opinion and in our notice of proposed summary disposition, we affirm Defendant's conviction for one count of larceny over $20,000.

**IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**RODERICK T. KENNEDY, Judge**