**Electronically Filed
Supreme Court
SCWC-17-0000701
24-JUN-2020
08:14 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellee,

vs.

ANTHONY G. BEAUDET-CLOSE,
Petitioner/Defendant-Appellant.

SCWC-17-0000701

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-17-0000701; CR. NO. 16-0368K)

JUNE 24, 2020

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY NAKAYAMA, J.

We held in State v. Mainaaupo, 117 Hawaiʻi 235, 178

P.3d 1 (2008), that the foundational privilege against self-

incrimination, commonly referred to as the "right to remain

silent," attaches during post-arrest police interrogation. We

later expanded the scope of this privilege to pre-arrest detainment. State v. Tsujimura, 140 Hawai'i 299, 400 P.3d 500 (2017). This case explores if a suspect's refusal to reenact the incident for which the suspect is being interviewed invokes the right to remain silent and if the prosecution's reference to the suspect's refusal at trial violates that right.

In 2016, Petitioner/Defendant-Appellant Anthony G. Beaudet-Close (Beaudet-Close) was involved in an altercation with Luke Ault (Ault) during which Beaudet-Close allegedly punched and kicked Ault multiple times. As a result of the altercation, Ault sustained permanent and life-threatening injuries. Beaudet-Close was charged with Attempted Murder in the Second Degree and Assault in the First Degree.

At trial, the State played for the jury a video of a detective interviewing Beaudet-Close (police interview video). The police interview video concluded with Beaudet-Close declining the detective's request that Beaudet-Close reenact the altercation.

Beaudet-Close filed a motion for a mistrial after the jury viewed the police interview video, arguing that it was an impermissible comment on his invocation of his right to remain silent. The circuit court denied Beaudet-Close's motion and trial continued.

The jury convicted Beaudet-Close of Attempted Murder in the Second Degree and the circuit court sentenced Beaudet-Close to life in prison.  The ICA affirmed the Judgment of Conviction and Sentence on appeal.

In his application for writ of certiorari, Beaudet-Close argues that he invoked his right to remain silent when he refused to participate in a reenactment and that the prosecutor's decision to play a video of that refusal before the jury was an improper comment on his invocation of that right.

We agree.  We hold that Beaudet-Close invoked his right to remain silent when he declined to participate in a reenactment of the encounter and that his right to do so was infringed when the prosecution played the police interview video before the jury at trial.

## I.   BACKGROUND

On November 9, 2016, the State of Hawaiʻi (the State) charged Beaudet-Close by complaint with Attempted Murder in the Second Degree and Assault in the First Degree.  The charge arose from an altercation that took place between Beaudet-Close and Ault on October 28, 2016 in Kailua Kona on the island of Hawaiʻi.  Ault was seriously injured during the altercation.

## A.    Trial

Beaudet-Close's jury trial began on July 11, 2017.[1] During opening statements, the State presented its theory that on the night of the incident, Beaudet-Close hit Ault in the face so hard that he put him into a coma.  Beaudet-Close attacked Ault with so much force, the State argued, because he intended to kill Ault.  The State asserted that multiple witnesses who saw the attack would testify that Beaudet-Close kicked and punched Ault, but that Ault never struck Beaudet-Close back or tried to defend himself.  The State explained that Ault, who remained in a coma for weeks after the incident, suffered multiple facial fractures, a subdural hematoma, and a traumatic brain injury.

In Beaudet-Close's opening statements, his counsel explained that Beaudet-Close was walking through a dangerous area where drugs were frequently sold and consumed when Ault approached him with a knife and said "[w]e got shit to settle." Beaudet-Close argued that he acted in self-defense and did not intend to kill Ault.

### 1.    Detective Walter Ah Mow's Testimony

The State called retired Hawaiʻi Police Department (HPD) Detective Walter Ah Mow (Detective Ah Mow).  Detective

---

1    The Honorable Melvin H. Fujino presided.

Ah Mow worked for the Criminal Investigation Section in Kona in 2016 and was assigned to the "assault investigation" that is the subject of this appeal. He testified that Beaudet-Close became a person of interest after a witness identified Beaudet-Close as the assailant. Detective Ah Mow stated that on November 7, 2016, he interviewed Beaudet-Close, who had already turned himself in for the assault and was confined to a cellblock. Detective Ah Mow video recorded the interview.

According to Detective Ah Mow, Beaudet-Close told him that on the night of the incident, Ault had brandished a knife. Detective Ah Mow testified that Beaudet-Close's statement did not make sense and that he was never able to corroborate Beaudet-Close's assertion that Ault had brandished a knife. Detective Ah Mow stated, "[t]here was no knife involved."

Detective Ah Mow explained that he advised Beaudet-Close of his "rights regarding the making or not making of a statement . . . [and] his rights regarding an attorney" using the standard Hawaiʻi Police Department Advice of Rights form (Advice of Rights Form). Detective Ah Mow read the Advice of Rights Form to Beaudet-Close, who initialed it in various places. Beaudet-Close's initials and verbal statements indicated that he understood the Advice of Rights Form, that he waived his right to an attorney, and that he was willing to

answer questions and to make a statement.  The State moved a
copy of the Advice of Rights Form into evidence.

The State then moved to place Exhibit 13A, a copy of
the police interview video, into evidence.  Beaudet-Close
objected as to foundation and on Hawai'i Rules of Evidence (HRE)
Rule 403[2] grounds.  The circuit court overruled those objections
in the following exchange:

> [BEAUDET-CLOSE'S COUNSEL]: Uh, just as to foundation,
> Your Honor, I don't know – I haven't reviewed that
> disc but otherwise that's my objection.
>
> THE COURT: Court will receive 13A.
>
> . . . .
>
> [BEAUDET-CLOSE'S COUNSEL]: And if I could, Your
> Honor, I also object to 13A on 403 prior to
> publication.
>
> THE COURT: Overruled.

The State published the video to the jury.

### 2.   The Police Interview Video

The police interview video depicts Detective Ah Mow
interviewing Beaudet-Close at the Kona Police Station on
November 7, 2016.  First, Detective Ah Mow confirmed with
Beaudet-Close that Beaudet-Close had turned himself in and had

---

[2] HRE Rule 403 provides,

> Exclusion of relevant evidence on grounds of prejudice,
> confusion, or waste of time.  Although relevant, evidence may be
> excluded if its probative value is substantially outweighed by
> the danger of unfair prejudice, confusion of the issues, or
> misleading the jury, or by considerations of undue delay, waste
> or time, or needless presentation of cumulative evidence.

reviewed the Advice of Rights Form with the detective. Beaudet-Close verbally waived his right to remain silent and his right to the presence of an attorney, and signed the Advice of Rights Form, indicating that he waived those rights. Detective Ah Mow informed Beaudet-Close that if he chose to answer questions, he had the right to stop answering questions at any time. Beaudet-Close stated that he was willing to answer Detective Ah Mow's questions.

Next, Detective Ah Mow showed Beaudet-Close a photo lineup. Beaudet-Close was unable to identify Ault. Beaudet-Close stated that on the night of the incident he was walking when a man said his name, said "there you are, we got some shit to settle," identified himself as Ault, and lunged at Beaudet-Close with a knife. Beaudet-Close explained that he kicked and punched Ault and succeeded in kicking the knife out of Ault's hand. Beaudet-Close asserted that he did not use any weapons, but that he punched Ault once and kicked Ault seven to eight times, including two or three kicks to the head. Beaudet-Close stated that he then called the police.

Beaudet-Close stated that he had never met Ault before, but that he had heard Ault was "out to look for him" because of Beaudet-Close's ex-girlfriend.

After Beaudet-Close explained the altercation and the

events surrounding it, Detective Ah Mow requested that Beaudet-Close participate in a video reconstruction of the altercation at the scene "because I want your side of the story." Detective Ah Mow explained that Beaudet-Close did not have to participate if he did not want to participate. After Beaudet-Close stated that he was scared, Detective Ah Mow again told him that he did not have to participate in the reenactment. Beaudet-Close continued that he was afraid for his life and for his family because he thought Ault's friends might try to seek revenge.

Detective Ah Mow stated, "[s]o how do you feel about doing a video reconstruction. Like I say, we don't have to." Beaudet-Close replied, "right now I'm not comfortable with that."

Beaudet-Close continued that if he had known Ault would be at the scene of the altercation that night, he would have parked somewhere else and walked a different way. Detective Ah Mow told Beaudet-Close that he had no further questions and told Beaudet-Close that since the authorities were not sure about the extent of Ault's injuries, the investigation was still ongoing. Beaudet-Close again expressed that he feared for his family. Detective Ah Mow ended the interview.

3.   **Motion for Mistrial**

On July 13, 2017, the day the jury saw the video of

8

Beaudet-Close's interview, Beaudet-Close filed a Motion for Mistrial. Beaudet-Close argued that the admission of his "refusal to provide statements and cooperate in a 'scene reconstruction'" in the police interview video was "plainly impermissible." Beaudet-Close asserted that the only reason the prosecutor would have played the portion of the video where Beaudet-Close refuses to participate in the scene reconstruction was to imply Beaudet-Close's guilt. Beaudet-Close concluded that when "the State knowingly played for the jury [footage of Beaudet-Close] choosing to invoke his right to remain silent, refuse [to answer] future statements and decline to participate in furthering the Hawaii Police Department's investigation," the State "violated [Beaudet-Close's] rights against compelled self-incrimination guaranteed by article I, section 10 of the Hawaii Constitution."

At trial the following morning, the circuit court denied Beaudet-Close's motion. The circuit court observed that Beaudet-Close did not object to the video at the motion for voluntariness hearing. The circuit court then stated:

> Further, the court would find as far as State's Exhibit 13A, which was received yesterday, that the defendant had already waived his rights, gave his story and towards the end of the State's Exhibit 13A, the Detective is asking if he would like to do a reconstruction and go physically show so he can tell his side of the story, meaning what he just told the Detective. So the court would deny the defendant's motion for mistrial

9

### 4. Beaudet-Close's Testimony

Beaudet-Close testified last. Beaudet-Close testified that on the night of the incident, he went to the Aloha Gas Station near the scene of the incident at around 9:00 p.m. Beaudet-Close began to walk down a road near the gas station when someone said "[t]here you are. We got some shit to settle." Beaudet-Close stated that the person identified himself as "Luke" and lunged at Beaudet-Close with a knife that was no more than three inches long. Beaudet-Close testified that after Ault fell to the ground, "I kicked him in his stomach maybe two times and I noticed the knife in his hand so I kicked it. And it was still in his hand, I kicked it again. And from there I kicked him in his face and he stopped moving right there." Beaudet-Close stated that he feared he was still in danger, so he started to yell. Beaudet-Close explained that he then called 911. Beaudet-Close testified that he left when he heard the police arrive because he was still scared. Beaudet-Close stated that he did not intend to kill Ault.

### B. Verdict and Sentencing

On July 19, 2017, the jury found Beaudet-Close guilty of Attempted Murder in the Second Degree. On September 13, 2017, the circuit court sentenced Beaudet-Close to life in prison and ordered that he pay $3,041.66 in restitution.

C.    Appeal

The ICA affirmed the circuit court's Judgment of Conviction and Sentence.

With respect to the police interview video, the ICA held that Beaudet-Close's statements declining to participate in the reconstruction did not invoke his right to remain silent. The ICA distinguished the facts of this case from those of State v. Rodrigues, 113 Hawai'i 41, 147 P.3d 825 (2006), by observing that in this case, Beaudet-Close "was not refusing to speak further on the matter."  The ICA continued, "rather than remain silent, [Beaudet-Close] continued to speak and explain his fear of returning back to the scene and his ongoing discomfort with the situation."  Therefore, the ICA held, Beaudet-Close did not invoke his right to remain silent and the circuit court did not err in admitting the video.  The ICA affirmed the circuit court's Judgment of Conviction and Sentence and entered its Judgment on Appeal on July 9, 2019.

Beaudet-Close filed a timely Application for Writ of Certiorari on July 11, 2019.  In his application, Beaudet-Close asserts that, contrary to the ICA's conclusion that Beaudet-Close did not assert his right to remain silent, the Ninth Circuit's holding in Hurd v. Terhune, 619 F.3d 1080 (9th Cir. 2010) makes clear that when police request that a suspect

11

reenact an incident, the suspect's refusal is an unambiguous invocation of the right to remain silent.  Beaudet-Close continues that the facts of this case are even worse than those of Hurd because in Hurd the prosecutor merely made references to the defendant's refusal to reenact the incident, but here, the prosecutor played a video of Beaudet-Close refusing to reenact the altercation before the jury.  Therefore, Beaudet-Close concludes, "[t]his visual is equally, if not more, prejudicial to [Beaudet-Close's] constitutional right to remain silent."

## II. STANDARD OF REVIEW

### A.   Constitutional Issues

"Issues of constitutional interpretation present questions of law that are reviewed de novo."  Sierra Club v. Dep't of Transp. of State of Hawai'i, 120 Hawai'i 181, 196, 202 P.3d 1226, 1241 (2009).

## III. DISCUSSION

We hold that Beaudet-Close unambiguously invoked his right to remain silent[3] when he declined Detective Ah Mow's

---

3     Both the United States Constitution and the Hawai'i Constitution protect a criminal defendant's privilege against self-incrimination, or "right to remain silent."  See Miranda v. Arizona, 384 U.S. 436, 444 (1966).
    The Fifth Amendment to the United States Constitution provides:  "No person shall . . . be compelled in any criminal case to be a witness against himself[.]"  U.S. Const. amend. V.
    Likewise, article 1, section 10 of the Hawai'i Constitution states, "nor shall any person be compelled in any criminal case to be a witness against oneself."  Haw. Const. art. 1 § 10.

12

request that Beaudet-Close participate in a reenactment of the incident. Moreover, consistent with this court's holding in State v. Domingo, 69 Haw. 68, 733 P.2d 690 (1987), Beaudet-Close's privilege against self-incrimination was infringed when, over his objection, the circuit court permitted the jury to view a video of Beaudet-Close invoking that privilege.

**A.  Beaudet-Close invoked his right to remain silent when he refused to participate in the reenactment.**

Beaudet-Close argues that the ICA erred in concluding that Beaudet-Close's decision not to participate in the reenactment did not constitute an invocation of his right to remain silent.[4] This assessment is correct as a matter of federal law. See Hurd, 619 F.3d 1080.

In Hurd, the United States Court of Appeals for the

---

4     The ICA held that, under Rodrigues, 113 Hawai'i at 49, 147 P.3d at 833, Beaudet-Close did not invoke his right to remain silent because he was not "refusing to speak further on the matter." However, the ICA's application of Rodrigues was incorrect. In holding that a defendant's refusal to repeat his statement on tape was an invocation of his right to remain silent, the Rodrigues court explained that

> when the questioning of a suspect is otherwise complete, and the police request that the suspect reiterate his or her statement in order to memorialize it electronically, the suspect's refusal to do so amounts to an invocation of the right to remain silent precisely because the suspect is refusing to speak further on the matter.

Id.
     Here, Detective Ah Mow ceased questioning after Beaudet-Close stated that he did not want to go back over his statement by reenacting it. Beaudet-Close continued to speak, but only about his fear for himself and his family. Therefore, under the Rodrigues analysis, Beaudet-Close invoked his right to remain silent.

13

Ninth Circuit (Ninth Circuit) analyzed the prosecution's use at trial of defendant Hurd's refusal to participate in a reenactment of how he shot his wife.  619 F.3d at 1082.  There, police took Hurd into custody after his wife was killed in a shooting at his home.  Id. at 1083.  Hurd expressed his willingness to speak to police without an attorney, to answer detectives' questions, and to give his side of what had happened.  Id.  Hurd explained that he had offered to lend his gun to his estranged wife, but that it had accidentally discharged while he attempted to load it for her.  Id.  When detectives asked Hurd to reenact how the shooting had occurred, Hurd refused.  Id. at 1084.  The Ninth Circuit held that

> Hurd unambiguously invoked his right to silence when the officers requested that he reenact the shooting [and] Hurd responded to the officers' requests by saying, among other things, "I don't want to do that," "No," "I can't," and "I don't want to act it out because that – it's not that clear."

Id. at 1088-89 (emphasis added).  Because "a suspect may invoke his right to silence at any time during questioning and that [] silence cannot be used against him at trial," id. at 1087, the Ninth Circuit held that the prosecutor's reference to Hurd's invocation of his right to silence was not harmless.  Id. at 1090.  The Ninth Circuit therefore vacated Hurd's conviction. Id. at 1091.

Applying the Hurd analysis to this case, Beaudet-Close

14

clearly invoked his right to remain silent when he refused to participate in a reenactment of Ault's beating. Here, Beaudet-Close turned himself in to police as the perpetrator of Ault's beating. In custody, Beaudet-Close waived his right to an attorney and agreed to answer questions and provide his side of the story. After Beaudet-Close provided his statement and answered Detective Ah Mow's questions, Detective Ah Mow asked Beaudet-Close if he would return to the scene of the incident to reenact the events that had transpired. Beaudet-Close stated that he did not feel comfortable doing so and explained that he was scared. Detective Ah Mow again asked Beaudet-Close if he would reenact the events and Beaudet-Close again said that he would not, because he was scared. At that point, Detective Ah Mow ended the interview.[5] Pursuant to the Hurd analysis, Beaudet-Close invoked his right to silence when he refused to reenact the incident. See Hurd, 619 F.3d at 1088-89.

Because we are persuaded by the Ninth Circuit's interpretation in Hurd, we hold that a suspect's refusal to reenact the incident for which the suspect is in custody is an unambiguous invocation of the suspect's right to remain silent. Beaudet-Close invoked his right to remain silent when he

___

5    That Detective Ah Mow ceased questioning when Beaudet-Close declined to participate in the reenactment might indicate that Detective Ah Mow considered that refusal an invocation of Beaudet-Close's right to remain silent.

15

repeatedly indicated to Detective Ah Mow that he did not wish to reenact his altercation with Ault.

**B.    Beaudet-Close's right to remain silent was infringed when video footage of him invoking that right was shown, over his objection, to the jury.**

Beaudet-Close argues that his invocation of his right to remain silent was impermissibly used against him at trial when the prosecutor played before the jury a video of him invoking that right.

Article 1, section 10 of the Hawai'i Constitution, which states "nor shall any person be compelled in any criminal case to be a witness against oneself[,]" provides for a criminal defendant's right to remain silent. Haw. Const. art 1, § 10. We have held that "[a] concomitant of the right to remain silent is the prohibition on the prosecution from commenting on a person's exercise of that right." Tsujimura, 140 Hawai'i at 314, 400 P.3d at 515. As such, "the prosecution may not comment on a defendant's failure to testify." State v. Wakisaka, 102 Hawai'i 504, 514, 78 P.3d 317, 327 (2003).

In State v. Domingo, this court analyzed when the introduction of evidence showing that a defendant invoked certain constitutional rights infringes upon those rights. 69 Haw. at 69, 733 P.2d at 691. There, we held that "[t]he introduction, over objection, of evidence that as [sic]

16

defendant had invoked his rights under Sections 10 and 14 of Article 1 of the Constitution of the State of Hawaii, where there was no issue as to whether the defendant had done so, would infringe on those rights." Id. (citing Doyle v. Ohio, 426 U.S. 610 (1976)). We went on to explain that the introduction of this evidence would infringe the defendant's right to remain silent because a jury would likely infer the defendant's guilt from his invocation of his right. Id. at 70, 733 P.2d at 691-92.

In Domingo, the defendant signed an Advice of Rights Form, which was introduced as evidence. Id. at 69, 733 P.2d at 691. The sections where the defendant had invoked his constitutional rights were redacted. Id. Nevertheless, this court held that given the context of the rest of the evidence, the jury could and probably did infer that the defendant had invoked his constitutional rights. Id. at 70, 733 P.2d at 691-92. In other words, in a situation where the prosecution publishes evidence that a defendant has invoked the right to remain silent, the controlling inquiry is whether or not the jury would infer from that evidence that the defendant invoked that right. If the jury can make such an inference, the prosecutor has impermissibly used silence against the defendant

at trial.[6]

The introduction of the police interview video infringed Beaudet-Close's right to remain silent under the Domingo test. The jury was shown the portion of the video in which Beaudet-Close refused to participate in the reenactment. The jury was not told that Beaudet-Close's refusal to reenact the incident constituted an invocation of his right to remain silent. However, like in Domingo, it is likely that the jury inferred from seeing this video that Beaudet-Close invoked this right, because up until the moment Beaudet-Close declined to cooperate with the reenactment, Beaudet-Close had answered all of Detective Ah Mow's questions. Even if the jury did not infer that Beaudet-Close officially invoked his right to remain silent, the jury could have nevertheless made the inference, based on Beaudet-Close's refusal to cooperate with Detective Ah Mow in this way, that Beaudet-Close was hiding something.

---

6 The Domingo court held that the introduction of evidence that a defendant has invoked his right to remain silent infringes that right. 69 Haw. at 69, 733 P.2d at 691. However, the Domingo court proceeded to analyze the introduction of that evidence under the HRE Rule 403 probative value versus prejudicial effect balancing test. Id. at 70, 733 P.2d at 691-92. The court stated that if the jury can infer that the defendant invoked his constitutional rights, the likelihood that the jury will make an impermissible inference therefrom far outweighs the probative value of the evidence. Id. The Domingo court therefore held that the introduction of the evidence was an abuse of discretion under HRE Rule 403. Id.

It appears that after implying that the defendant's constitutional right was infringed, the Domingo court did not need to address the HRE Rule 403 test. However, either inquiry results in the same conclusion - that the introduction of the subject evidence at trial necessitated vacating the defendant's conviction.

Beaudet-Close's right to remain silent was infringed because his decision not to testify against himself by reenacting the incident was used against him at trial.

## IV.   CONCLUSION

Beaudet-Close's right to remain silent was infringed when video footage of his invocation of that right was published to the jury over his objection.  The jury likely inferred from the video that Beaudet-Close invoked his right to remain silent when he refused to participate in a reenactment of the incident at the close of his interview.  Therefore, pursuant to the standard we set forth in Domingo, Beaudet-Close's invocation of his right to remain silent was used against him at trial in violation of article 1, section 10 of the Hawai'i Constitution.

We vacate the ICA's July 9, 2019, Judgment on Appeal, which affirmed the circuit court's September 13, 2017, Judgment of Conviction and Sentence and remand for a new trial.

Victor M. Cox                              /s/ Mark E. Recktenwald
for petitioner
                                           /s/ Paula A. Nakayama
Stephen L. Frye
for respondent                             /s/ Sabrina S. McKenna

                                           /s/ Richard W. Pollack

                                           /s/ Michael D. Wilson

