**Electronically Filed
Supreme Court
SCWC-21-0000364
15-MAR-2023
08:01 AM
Dkt. 25 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

TROY D. BORGE, JR.,
Petitioner/Defendant-Appellant.

SCWC-21-0000364

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-21-0000364; CR. NO. 2CPC-20-0000288)

MARCH 15, 2023

RECKTENWALD, C.J., NAKAYAMA, McKENNA, WILSON, AND EDDINS, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I. Introduction

This case addresses whether the Circuit Court of the Second Circuit ("circuit court")[1] abused its discretion by denying Troy D. Borge's ("Borge") motion to dismiss an indictment where,

---

[1] The Honorable Kelsey T. Kawano presided.

before the grand jury, the prosecutor elicited testimony that Borge had invoked his right to remain silent.

We also address whether the circuit court erred by awarding the complaining witness ("CW") $1,461,444.01 in restitution for hospital bills under Hawai'i Revised Statutes ("HRS") § 706-646 (2014 & Supp. 2019) when (1) CW did not request restitution for these amounts; and (2) most of the bills were written off by the hospital and some were paid by CW's insurer, AlohaCare.

We hold the circuit court abused its discretion when it denied Borge's motion to dismiss indictment.  The prosecutor violated Borge's Hawai'i due process right to a fair and impartial grand jury hearing by eliciting testimony before the grand jury that Borge invoked his right to remain silent.

With respect to restitution, interpreting HRS § 706-646, we hold that (1) restitution is limited to amounts requested by a victim; and (2) the restitution awarded was not for CW's "reasonable and verified losses" because (a) HRS § 706-646(3) allows for restitution only for amounts "sufficient to reimburse any victim fully for losses" (emphasis added); (b) the collateral source rule does not apply; and (c) even if HRS § 706-646 was ambiguous, the rule of lenity would not allow the restitution awarded here for the reasons already provided.

2

We therefore also overrule the opinion of the Intermediate Court of Appeals ("ICA") in State v. Tuialii, 121 Hawai'i 135, 214 P.3d 1125 (App. 2009), overruled on other grounds by State v. Kealoha, 142 Hawai'i 46, 414 P.3d 98 (2018), which held that a restitution award can include sums paid by a direct victim's insurer.

Hence, we vacate the circuit court's September 3, 2020 findings of fact, conclusions of law, and order denying motion to dismiss indictment ("order denying motion to dismiss indictment"), June 7, 2021 judgment of conviction and sentence ("judgment"), and June 17, 2021 free-standing order of restitution, as well as the ICA's October 19, 2022 judgment on appeal, and we remand to the circuit court for dismissal of the indictment and further proceedings consistent with this opinion.

## II.  Background

### A.  Factual background

On November 5, 2019, the Maui Police Department ("MPD") responded to an incident at the Pā'ia Youth and Cultural Center. CW suffered serious injuries after Borge struck him on the head several times with a piece of wood.  MPD arrested Borge the following day and initiated criminal charges.

**B.  Circuit court proceedings**

**1.   First indictment**

On November 22, 2019, the State of Hawai'i ("the State") presented the case to a grand jury, which returned an indictment charging Borge with attempted second-degree murder in violation of HRS §§ 705-500(2) (2014) and 707-701.5 (2014 & Supp. 2018).[2]

On April 13, 2020, however, the circuit court[3] granted Borge's motion to dismiss the first indictment without prejudice.[4]

---

[2]     The State actually first prosecuted Borge in the District Court of the Second Circuit ("district court") in case no. 2DCW-19-2338.  The complaint charged Borge with attempted murder in the second degree.  The Honorable Kristin M. Hamman found probable cause lacking for the attempted second-degree murder charge, but found probable cause for the lesser included offense of first-degree assault.  The State then filed an amended complaint charging attempted first-degree assault and the district court committed Borge to the circuit court for further proceedings.  No further action appears in the record on this charge.

Then, on April 14, 2020, the day after the first indictment was dismissed, the State filed a felony information against Borge in case no. 2CPC-20-207, charging him with first-degree assault.  On September 13, 2021, after Borge's conviction and sentencing in the case before this court, the Honorable Kelsey T. Kawano granted the State's motion to dismiss the felony information without prejudice.

[3]     The Honorable Rhonda I.L. Loo presided over the circuit court proceedings in case no. 2CPC-19-795.

[4]     The circuit court concluded the State improperly presented hearsay testimony regarding an eyewitness's statements to the police and statements of CW's treating physician.  The State appealed to the ICA, but the appeal was dismissed after the State re-indicted Borge in the case now before this court.

####    2.    Second indictment

On June 26, 2020, the State convened a second grand jury proceeding. The State presented testimony from an eyewitness and MPD Detective Dennis Clifton ("Detective Clifton").

Detective Clifton testified that he was assigned to investigate the case and that he met with Borge on November 7, 2019, the day after Borge was arrested. The prosecutor then questioned Detective Clifton about that contact:

> Q.  . . . . Did you notice any injures to Mr. Borge?
> A.  No.
> Q.  None to his head, arms, anyplace?
> A.  No, sir.
> Q.  Okay.  And you didn't take any statement from Mr. Borge?
> A.  We attempted to question him, but he requested to speak to an attorney.

(Emphases added.)

After completing questioning of Detective Clifton, the prosecutor stated, "Before I proceed, Detective Clifton testified [that] Mr. Borge was asking for an attorney. I'm going to advise the grand jury that you're not to consider that information in your deliberation."

On June 29, 2020, the grand jury returned a second indictment, again charging Borge with attempted second-degree murder.

5

### 3. Motion to dismiss second indictment

On July 17, 2020, Borge moved to dismiss the second indictment.[5]  Borge argued the prosecutor committed prosecutorial misconduct before the grand jury in violation of his due process rights by improperly eliciting testimony that he had exercised his right to remain silent.  He pointed to Detective Clifton's testimony that MPD "attempted to question" Borge, "but he requested to speak to an attorney."

The circuit court denied Borge's motion to dismiss the second indictment and, on September 3, 2020, entered its order denying motion to dismiss indictment.

### 4. No contest plea

On December 7, 2020, Borge entered a no-contest plea to the lesser included offense of assault in the first degree in violation of HRS § 707-710 (2014).  Borge reserved the right to

---

[5]     Borge initially asserted HRS § 701-110(2) (2014) and the doctrine of collateral estoppel barred the indictment because the district court entered a final order committing only the lesser included first-degree assault charge, not the attempted second-degree murder charge, to the circuit court for further proceedings.  Borge is not pursuing that claim on certiorari and we therefore do not address it.

    Borge also alleged the prosecutor presented excessive hearsay and failed to present clearly exculpatory evidence.  He asserted the individual and cumulative effect of the alleged misconduct violated his due process right to a fair and unbiased grand jury.  In addition, Borge asserted the indictment must be dismissed because the evidence presented to the grand jury was insufficient to establish probable cause that Borge committed attempted second-degree murder.  Because we hold the improper elicitation of testimony regarding Borge's invocation of his right to remain silent requires dismissal of the indictment, we do not further discuss these additional arguments.

6

appeal the circuit court's order denying motion to dismiss indictment.

### 5.   Sentencing, including restitution order

A presentence report was filed on February 2, 2021.  The circuit court ordered the filing of a restitution report.  In the Second Circuit, the court's special services branch contacts those identified in the police report to determine whether they are victims who have sustained losses and wish to submit claims for restitution.

On April 7, 2021, the State filed an addendum to the presentence report regarding restitution.  It included a restitution claim from CW's mother requesting $6,320.66 for her and her husband's airfare, lodging, ground transportation, food, and other expenses for their travel back and forth from their North Dakota home due to CW's injuries and hospitalizations.[7] The court officer recommended restitution totaling $5,030.64 from these amounts.  The circuit court denied the claims from CW's parents.

However, the addendum also included 115 pages of billing records from Maui Memorial reflecting total medical bills of at

---

[7]    The request also included $100 for dental services and a $770 credit card charge from Maui Health System's Maui Memorial Medical Center ("Maui Memorial"), both of which the court officer did not recommend based on "insufficient documentation."

least $1,461,444.01,[8] and also reflecting payments of $204,174.49 by AlohaCare as well as adjustments or write-offs of $996,283.16.[9]

The circuit court held several hearings on sentencing and restitution; Borge continuously objected to restitution being ordered for the medical bills.[10]

On June 7, 2021, the circuit court entered its judgment, convicting Borge of first-degree assault and sentencing him to a ten-year term of imprisonment. The circuit court also sentenced Borge to pay restitution of $1,461,444.01 for CW's medical bills. On June 17, 2021, the circuit court also entered a free-standing order of restitution, ordering Borge to pay CW the $1,461,444.01.

---

[8]    According to the State, this is the total amount for all billings in the record.

[9]    The bills appear to reflect payments of $160,008.20, $245.88, and $43,920.41, sub-totaling $204,174.49, adjustments or write-offs of $617,625.08, $387.12, and $378,270.96, sub-totaling $996,283.16, and a remaining balance of $261,619.36. These amounts would total $1,462,077.01, a difference from the $1,461,444.01 that would not be reconciled by the $770 credit card charge referenced supra in note 6. These differences are immaterial, however, for the rulings in this opinion.

[10]    At the June 4, 2021 hearing, the circuit court referenced a filing from the State, "consisting of a declaration of custodian of records submitted under cover from Alana Kushi (phonetic), who declares pursuant to declaration that she is the patient financial services assistant with Maui Health System, Maui Memorial Medical Center; that she is the custodian of records on behalf of Maui Health System Maui Memorial Medical Center; that Maui Health System, Maui Memorial Medical Center maintains the attached billing records; and attached billing records are true and correct copies of the billing records; and that those billing records contain 115 pages for" CW. This filing does not appear in the record.

**C. ICA proceeding**

On appeal, Borge asserted the circuit court erred when it (1) denied his motion to dismiss the second indictment; and (2) ordered he pay restitution to CW that included medical expenses paid by CW's insurance provider. Borge repeated the arguments raised in his motion to dismiss the second indictment. Borge additionally argued the restitution order was not supported by our restitution statute, HRS § 706-646.

On September 14, 2022, the ICA filed a summary disposition order affirming the circuit court's judgment. State v. Borge, No. CAAP-21-0000364 (Haw. App. Sept. 14, 2022) (SDO). With respect to the issues we address on certiorari, the ICA concluded the prosecutor's examination of Detective Clifton did not violate Borge's due process right to a fair and impartial grand jury. Id. at 4-6. Citing State v. Rodrigues, 113 Hawai'i 41, 147 P.3d 825 (2006), the ICA framed the prosecutor's line of inquiry "as detailing the actions Detective Clifton took the night of the incident[.]" Borge, SDO at 5 (citing Rodrigues, 113 Hawai'i at 49-50, 147 P.3d at 833-34). The ICA noted Detective Clifton referenced Borge's silence only once. Id. The ICA reasoned that "the prosecutor did not comment on Borge's silence, did not use his silence to imply his guilt, and immediately gave curative instructions to the grand jury[,]" so

9

the questioning did not constitute prosecutorial misconduct.
Id. at 6.

The ICA also addressed Borge's assertion that the restitution order did not comply with the statutory requirements set out by HRS § 706-646. Id. at 12-14. The ICA cited its Tuialii opinion for the proposition that HRS § 706-646 "does not support the theory that a crime victim has not suffered a loss if (or to the extent that) the victim has received indemnification from its insurer[.]" Borge, SDO at 12 (citing State v. Martin, No. CAAP-19-0000220 (Haw. App. Mar. 10, 2020) (SDO) (citing Tuialii, 121 Hawai'i at 139-42, 214 P.3d at 1129-32)). The ICA did not address Borge's argument that the insurance carrier was not a victim. See id. at 12-14.

## D. Certiorari proceedings

On certiorari, Borge asserts the ICA erred in affirming the circuit court's (1) order denying motion to dismiss indictment; and (2) restitution order. Borge repeats his arguments raised below.

## III. Standards of Review

## A. Motion to dismiss indictment

"A motion to dismiss an indictment is . . . reviewed for an abuse of discretion. The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a

10

party litigant." State v. Pitts, 146 Hawai'i 120, 129, 456 P.3d 484, 493 (2019) (citations omitted). "The burden of establishing abuse of discretion is on appellant, and a strong showing is required to establish it." State v. Wong, 97 Hawai'i 512, 517, 40 P.3d 914, 919 (2002) (citation omitted). "[D]ismissal of an indictment is required only in flagrant cases in which the grand jury has been overreached or deceived in some significant way." 97 Hawai'i at 526, 40 P.3d at 928.

B.  Constitutional violations

"Questions of constitutional law are reviewed under the right/wrong standard." Pitts, 146 Hawai'i at 129, 456 P.3d at 493 (citation omitted).

C.  Statutory interpretation

"The interpretation of a statute is a question of law. Review is de novo, and the standard of review is right/wrong." Kimura v. Kamalo, 106 Hawai'i 501, 507, 107 P.3d 430, 436 (2005) (citation omitted). Our statutory interpretation is guided by the following principles:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought

11

> by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.

Ito v. Invs. Equity Life Holding Co., 135 Hawai'i 49, 61, 346 P.3d 118, 130 (2015) (citation omitted).

### IV. Discussion

### A. The prosecutor violated Borge's due process right to a fair and impartial grand jury hearing by eliciting testimony before the grand jury that Borge invoked his right to remain silent

Article I, section 5 of the Constitution of the State of Hawai'i provides that no person shall be deprived of liberty without due process of law. We have recognized that due process of law requires a fair and impartial grand jury hearing. State v. Rodrigues, 63 Haw. 412, 417, 629 P.2d 1111, 1115 (1981). Further, prosecutorial misconduct that undermines the fundamental fairness and integrity of the grand jury process is presumptively prejudicial. Wong, 97 Hawai'i at 517-18, 40 P.3d at 919-20 (citations omitted). But "'prosecutorial misconduct' is a legal term of art that refers to any improper action committed by a prosecutor, however harmless or unintentional." State v. Williams, 146 Hawai'i 62, 72, 456 P.3d 135, 145 (2020) (citation omitted).

We have also repeatedly recognized the importance of the constitutional right against self-incrimination. See, e.g., State v. Mainaaupo, 117 Hawai'i 235, 252, 178 P.3d 1, 18 (2008)

12

("There is nothing more basic and more fundamental than that the accused has a constitutional right to remain silent, and the exercise of this privilege may not be used against [them]." (citations omitted)).  This right is secured by article I, section 10 of the Hawai'i Constitution, which provides, "nor shall any person be compelled in any criminal case to be a witness against oneself."  The right against self-incrimination is sacrosanct.  See Brown v. Walker, 161 U.S. 591, 637 (1896) ("The reprobation of compulsory self-incrimination is an established doctrine of our civilized society."); Havard v. State, 94 So.3d 229, 237 (Miss. 2012) ("A defendant's right against self incrimination is not only sacrosanct, but is commonly known across this land.").

Hence, we have held the right prohibits the prosecution from adducing evidence of or commenting on a person's exercise of that right.  See State v. Beaudet-Close, 148 Hawai'i 66, 72-73, 468 P.3d 80, 86-87 (2020).  We have further held that a prosecutor may not directly or indirectly imply guilt by eliciting testimony during a question-and-answer exchange with a witness at trial concerning a defendant's exercise of their right to remain silent.  State v. Tsujimura, 140 Hawai'i 299, 315-18, 400 P.3d 500, 516-19 (2017).  In those circumstances, we have applied the following test:  "whether the prosecutor intended for the information elicited to imply the defendant's

13

guilt or whether the character of the information suggests to the factfinder that the defendant's prearrest silence may be considered as inferential evidence of the defendant's guilt." 140 Hawai'i at 315, 400 P.3d at 516 (citing Rodrigues, 113 Hawai'i 41, 147 P.3d 825).

Before the second grand jury, the prosecutor asked Detective Clifton "And you didn't take any statement from Mr. Borge?" Detective Clifton responded, "We attempted to question him, but he requested to speak to an attorney."

The prosecutor may not have known that Detective Clifton would respond as he did. But he did know Borge had refused to make a statement. If a grand juror had asked that question, the prosecutor or grand jury counsel would have needed to inform the jury that it was not a proper question. It is difficult to understand why, in any grand jury proceeding, a prosecutor would ask an officer whether he obtained the defendant's statement when the answer is "no." Not only is such a question not needed to obtain an indictment,[11] absent unusual circumstances, the question and answer would violate a defendant's constitutional right against self-incrimination.

Regarding unusual circumstances, the State, as well as the ICA, opine that the question and answer were allowed by

---

[11] During the first grand jury proceeding, the State did not ask Detective Clifton whether Borge had given a statement before the jury returned the attempted murder indictment.

14

Rodrigues, 113 Hawai'i 41, 147 P.3d 825. See Borge, SDO at 5-6 (citing Rodrigues, 113 Hawai'i at 49-50, 147 P.3d at 833-34). In Rodrigues, at trial, the prosecutor elicited testimony that the defendant declined to agree to an audiotaped reiteration of his post-arrest statement to a detective. 113 Hawai'i at 49, 147 P.3d at 833. We held that, under the circumstances of that case, the elicited statement was not an improper comment on the defendant's refusal to testify. 113 Hawai'i at 49-50, 147 P.3d at 833-34. We stated the prosecutor's conduct was not improper because the question was posed and the information was elicited "as part of the prosecution's effort to maximize the reliability" of the detective's recollections "and to explain why the detective could only rely on his notes and not an audiotape of the interview[.]" Id.

Rodrigues, however, concerned unusual circumstances in a trial setting. The opinion does not affect a defendant's fundamental right against self-incrimination, nor the prohibition against the State adducing evidence of or commenting on a defendant's exercise of that right. Rodrigues held that the circumstances there did not rise to an improper comment on the defendant's refusal to testify, but its holding is limited to the unusual facts of that case. Rodrigues does not stand for the proposition that the State can routinely ask an officer whether there was an attempt to take a defendant's statement,

knowing that the defendant had refused, under the guise of establishing that an officer conducted a thorough investigation.

Further, Rodrigues also said the "line of inquiry designed to establish the detective's custom and practice regarding accurately transcribing such statements, was unaccompanied by any implication of guilt[.]"  Id.; see also Tsujimura, 140 Hawai'i at 318, 400 P.3d at 519 (emphasizing that Rodrigues does not permit the indirect use of a defendant's silence to imply guilt).  Rodrigues also does not mean, however, that if the State posits that testimony adduced regarding a defendant's exercise of the right against self-incrimination was not intended to imply guilt, admission of or comment on such testimony becomes permissible.  Such a subjective standard would vitiate a defendant's right against self-incrimination.

Rather, we hold that in the grand jury context, the test is whether the prosecutor intended for the information elicited to imply probable cause exists or whether the character of the information suggests to the jurors that the accused's silence may be considered as inferential evidence to find probable cause.  See Tsujimura, 140 Hawai'i at 315, 400 P.3d at 516 (citing Rodrigues, 113 Hawai'i 41, 147 P.3d 825).  Here, whether or not the State anticipated Detective Clifton's response,[12] the

---

[12]    The State argues the prosecutor's inquiry did not constitute misconduct because Detective Clifton's testimony was non-responsive.  Although the

16

character of the evidence clearly indicates its presentation was improper. The State adduced express evidence that Borge refused to give a statement to Detective Clifton. Simply put, the prosecutor should not have posed the question in the first place.[13]

The question and answer constituted a flagrant violation of Borge's due process rights. Hence, we hold the circuit court abused its discretion when it denied Borge's motion to dismiss this indictment.

## B. The circuit court erred by ordering Borge to pay $1,461,444.01 in restitution to CW

Borge also asserts the circuit court erred by ordering him to pay CW $1,461,444.01 in restitution for medical bills from

---

prosecutor's question technically called for a "yes" or "no" answer, Detective Clifton's answer was responsive. It addressed whether he took a statement from Borge; indeed, the question itself implicated Borge's right to remain silent. We do not address possible scenarios in which a witness's answer is completely non-responsive.

[13]    The ICA also agreed with the State's contention that the prosecutor advisement to the grand jury to disregard Detective Clifton's cured any misconduct. Borge, SDO at 5-6. We have held a curative instruction can sometimes "cure" prosecutorial misconduct. Mainaaupo, 117 Hawai'i at 255, 178 P.3d at 21 (citation omitted). We note that a "cure" generally comes from a judge's instruction, not from a prosecutor. HRS § 612-16(d) (2016) provides in relevant part:

> [T]he [circuit] court shall give [the grand jurors] such information as it may deem proper as to their duties and as to the law pertaining to such cases as may come before them. The court may further charge the grand jurors and alternate grand jurors from time to time, as it may deem necessary.

In any case, the "advisement" given here could not have constituted a "cure" even if given by the circuit court. The advisement was merely to disregard Detective Clifton's testimony that Borge "was asking for an attorney." There was no instruction to disregard Borge's refusal to give a statement, i.e., his exercise of his right to remain silent.

Maui Memorial.  Borge asserts the ordered restitution does not comply with HRS § 706-646.

HRS § 706-646 provides in relevant part:

> (1) As used in this section, "victim" includes any of the following:
> > (a) The direct victim of a crime including a business entity, trust, or governmental entity;
> > . . . .
> > (c) A governmental entity that has reimbursed the victim for losses arising as a result of the crime or paid for medical care provided to the victim as a result of the crime[.]
> > . . . .
> (2) The court shall order the defendant to make restitution for reasonable and verified losses suffered by the victim or victims as a result of the defendant's offense when requested by the victim. . . .
> (3) In ordering restitution, the court shall not consider the defendant's financial ability to make restitution in determining the amount of restitution to order.  The court, however, shall consider the defendant's financial ability to make restitution for the purpose of establishing the time and manner of payment. . . . Restitution shall be a dollar amount that is sufficient to reimburse any victim fully for losses, including but not limited to:
> > (a) Full value of stolen or damaged property, as determined by replacement costs of like property, or the actual or estimated cost of repair, if repair is possible;
> > (b) Medical expenses, which shall include mental health treatment, counseling, and therapy;
> > (c) Funeral and burial expenses; and
> > (d) Lost earnings, which shall include paid leave.

(Emphases added.)

For the following reasons, we agree that the circuit court's restitution order was erroneous and must be vacated.

## 1.    Under HRS § 706-646, restitution is only to be awarded to a victim only for amounts requested

Subsection (1) of HRS § 706-646 allows for restitution to a "victim."  Under HRS § 706-646(1)(a) and (c), "victim" means the "direct victim of a crime" or a "governmental entity that has

18

reimbursed the victim for losses arising as a result of the crime or paid for medical care provided to the victim as a result of the crime[.]" CW is obviously a direct victim under subsection (1)(a). The record does not indicate, however, that Maui Memorial and AlohaCare are governmental entities. In any event, the restitution was awarded to CW.

In State v. Demello, 136 Hawaiʻi 193, 196, 361 P.3d 420, 423 (2015), we held HRS § 706-646 allows for restitution of a victim's losses that are (1) reasonable, (2) verified, (3) suffered as a result of the defendant's conduct, and (4) requested by the victim. The language in requirement (4) expressly appears in subsection (2). See HRS § 706-646(2).

Here, the circuit court awarded $1,461,444.01 in restitution to CW for medical bills from Maui Memorial. But CW did not request restitution for these medical bills. Rather, the record includes a restitution claim from CW's mother requesting $6,320.66 for her and her husband's airfare, lodging, ground transportation, food, and other expenses for their travel back and forth from their North Dakota home due to CW's injuries and hospitalizations.[14] Even if we assume CW's parents had requested restitution on behalf of CW, CW never requested restitution for the medical bills that were awarded to him.

---

[14] As noted, the request also included $100 for dental services and a $770 credit card charge from Maui Memorial, both of which the court officer did not recommend based on "insufficient documentation."

19

Therefore, for this reason alone, the circuit court erred by awarding the $1,461,444.01 in medical expenses as restitution to CW.

**2. The restitution awarded was not for CW's reasonable and verified losses**

Borge also argues that restitution was erroneously ordered because AlohaCare paid Maui Memorial for CW's medical expenses. In other words, he argues that payments made on behalf of a direct victim by collateral sources are not "reasonable and verified losses" of the direct victim.[15]

The circuit court awarded restitution for the total of billings from Maui Memorial, including payments of at least $204,174.49 by AlohaCare and $996,283.16 in adjustments or write-offs.[16]

**a. HRS § 706-646(3) allows for restitution only for amounts sufficient to reimburse a victim fully for losses**

HRS § 706-646(3) expressly provides that "[r]estitution shall be a dollar amount that is sufficient to reimburse any victim fully for losses[.]" HRS § 706-646 does not define "losses" other than the categories of "losses" listed in subsection (3). Construing an early version of the original

---

[15] We address this issue based on the "capable of repetition, yet evading review" exception to the mootness doctrine. See State v. Tui, 138 Hawai'i 462, 468, 382 P.3d 274, 280 (2016).

[16] See supra note 8.

20

restitution statute, however, we stated, "[t]he total amount of the restitution ordered by the trial court should be the actual loss or damage incurred by the victim." State v. Johnson, 68 Haw. 292, 295, 711 P.2d 1295, 1298 (1985) (emphasis added) (citing HRS §§ 706-605(1)(e), 706-624(2)(i)).[17]

The plain language of HRS § 706-646(3) does not allow a restitution award to include adjustments of bills written off by medical providers. The victim never paid these amounts. Hence, the victim does not need to be "reimbursed" for amounts never paid.

By the same token, this plain language does not allow a restitution award to a direct victim to include medical expenses paid by an insurer or indemnifier. A direct victim has not paid these amounts, so there is nothing to "reimburse."

Amounts paid by a medical or casualty insurer differ from the "lost wages" we allowed in Demello, which is now reflected in section 706-646(3)(d), which provides restitution for "[l]ost earnings, which shall include paid leave." This is because a victim should be "reimbursed" for paid leave the victim used due to a defendant's offense, which the victim otherwise would have been able to take for other reasons.

---

[17] In Johnson, we used the term "actual loss" to affirm a restitution order in the amount of "$5,406.33 less $75.00." 68 Haw. at 295-97, 711 P.2d at 1298-99.

### b.    The collateral source rule does not apply

The circuit court applied the ICA's opinion in Tuialii, 121 Hawaiʻi 135, 214 P.3d 1125, when it ordered this restitution award.

In Tuialii, the ICA held the trial court properly ordered restitution to a direct victim of sums already paid by its insurer.  121 Hawaiʻi at 139, 214 P.3d at 1129.  The ICA posited that HRS § 706-646 does not call for reduction of restitution due to insured victims.  121 Hawaiʻi at 140, 214 P.3d at 1130. The ICA opined the legislature "had two intended purposes when adopting restitution":

> [I]n the criminal justice system, the victim of crime is almost always neglected.  By requiring the "convicted person" to make restitution and reparation to the victim, justice is served.  In so doing, the criminal repays not only "society" but the persons injured by the criminal's acts.  There is a dual benefit to this concept: The victim is repaid for his loss and the criminal may develop a degree of self-respect and pride in knowing that he or she has righted the wrong committed.

121 Hawaiʻi at 141, 214 P.3d at 1131 (second emphasis added) (quoting S. Stand. Comm. Rep. No. 789, in 1975 Senate Journal, at 1132).  The ICA concluded that requiring a defendant to pay restitution, even for amounts indemnified by the direct victim's insurer, "furthers the rehabilitative purposes of HRS § 706-646 to the greatest extent possible."  121 Hawaiʻi at 142, 214 P.3d at 1132.[18]

---

[18]    The ICA concluded a criminal court therefore "need not sort out insurance indemnities, subrogation rights, and/or other potential civil law

Justice Pollack's dissent in Demello opined that, contrary to Tuialii, "losses" do not include amounts covered by collateral sources like insurance. See Demello, 136 Hawai'i at 216 n.24, 361 P.3d at 443 n.24 (Pollack, J., dissenting) ("[A]n order of restitution based on gross receipts, instead of net income, would seemingly not represent [the victim's] actual loss." (emphasis added)). We now address the issue and agree that the collateral source rule does not apply to HRS § 706-646.

The collateral source rule is a common law doctrine. Bynum v. Magno, 106 Hawai'i 81, 86 n.11, 101 P.3d 1149, 1154 n.11 (2004) (citing Restatement (Second) of Torts § 920A cmt. d (1979)).[19] At common law, a civil defendant would be entitled to a jury trial for amounts over $5,000 under article I, section 13 of the Hawai'i Constitution. The Hawai'i Rules of Evidence ("HRE"), HRS Chapter 626, would govern a trial determination of whether medical expenses are reasonable and causally related to

implications before ordering a thief or other criminal to repay his victim under the criminal restitution statute." 121 Hawai'i at 142, 214 P.3d at 1132. This court rejected certiorari. State v. Tuialii, No. 29239 (Haw. Jan. 11, 2010) (order), denying cert. to 121 Hawai'i 135, 214 P.3d 1125 (App. 2009).

[19]    As explained in Bynum, in general, the collateral source rule is a tort law concept that payments made to an injured person from an independent source does not diminish recovery from the wrongdoer. 106 Hawai'i at 86, 101 P.3d at 1154. The Restatement (Second) of Torts § 920A provides that, under the collateral source rule, payments made to or benefits conferred on an injured party from other sources are not credited against the tortfeasor's liability, "although they cover all or a part of the harm for which the tortfeasor is liable." Comment b to section 920A further explains that although double compensation may result to the plaintiff, such a benefit should redound to the injured party rather than "become a windfall" to the party causing the injury. Restatement (Second) of Torts § 920A cmt. b.

an incident.  Pursuant to HRE Rule 1101(d)(3) (2016), however, the Hawai'i Rules of Evidence do not even apply to sentencing proceedings, including restitution determinations.

The restitution at issue here is simply not based on the common law of torts; it is a statutorily authorized remedy under the Hawai'i Penal Code.  And the goal of restitution has traditionally generally been to prevent injustice and unjust enrichment, Small v. Badenhop, 67 Haw. 626, 636 & n.12 & 13, 701 P.2d 647, 654 & n.12 & 13 (1985), and not to award "damages" to which the tort-action collateral source rule applies.

Hence, we hold the collateral source rule does not apply to restitution under HRS § 706-646.  Application of the rule would be inconsistent with the plain language of subsection (3), which only allows for a victim to be "reimbursed" for actual losses.

Hence, the ICA's holding in Tuialii that a restitution award can include sums paid by an insurer to a victim is overruled.

      **c.  Even if HRS § 706-646 was ambiguous, the rule of lenity would now allow the restitution awarded in this case**

Finally, if a statute is ambiguous, and the legislative history does not provide sufficient guidance, we follow the rule of lenity.  The rule of lenity provides that where a criminal statute is ambiguous, it "must be strictly construed against the government and in favor of the accused."  State v.

24

Guyton, 135 Hawai'i 372, 380, 351 P.3d 1138, 1146 (2015) (citations omitted); see also Bittner v. United States, 143 S. Ct. 713, 724 (2023) ("Under the rule of lenity, this Court has long held, statutes imposing penalties are to be 'construed strictly' against the government and in favor of individuals." (citation omitted)).

HRS § 706-646 is not ambiguous with respect to the restitution issues addressed in this opinion.  But, even if it was, the rule of lenity would mandate that we interpret the statute in Borge's favor based on the reasons already explained.

For all these reasons, the circuit court erred by awarding $1,461,444.01 in restitution to CW.

## V.  Conclusion

Based on the reasoning above, we vacate the circuit court's September 3, 2020 findings of fact, conclusions of law, and order denying motion to dismiss indictment, June 7, 2021 judgment of conviction and sentence, and June 17, 2021 free-standing order of restitution, as well as the ICA's October 19, 2022 judgment on appeal, and we remand to the circuit court for

dismissal of the indictment and further proceedings consistent with this opinion.

| | |
|---|---|
| Hayden Aluli<br>for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Renee Ishikawa Delizo<br>for respondent | /s/ Sabrina S. McKenna |
| | /s/ Michael D. Wilson |
| | /s/ Todd W. Eddins |

